ANTHONY HYNDIUK *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

(No. 56103;

First District (2nd Division)—October 16, 1973.

Richard J. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Marsile J. Hughes, Assistant Corporation Counsel, of counsel,) for appellant.

Donald E. Egan and Roger J. Guerin, both of Chicago, (Rothschild, Barry & Myers, of counsel,) for appellees.

Mr. JUSTICE HAYES delivered the opinion of the court:

This appeal arises out of an action for declaratory judgment against the City of Chicago seeking to have section 7.5—2 of the Chicago Zoning Ordinance, dealing with the minimum lot area for residences in an R2 district, declared invalid as applied to the subject property. After hearing testimony without a jury, the trial court held that the ordinance was invalid as applied to plaintiffs' property in that it prohibited plaintiffs from constructing a single-family residence as per the plans and specifications admitted in evidence. The City appeals from that judgment order.

The property in question is located at 3220 N. Nagle Avenue (west side of the street) in Chicago in an R2 residential zoning district. The minimum lot area for a residence in an R2 district is 5,000 square feet. The dimensions of the subject property are approximately 124.78 feet by 25 feet or a total of approximately 3,120 square feet. The lot is not a lot of record, but is only the south half of a lot of record.

Plaintiff, Anthony Hyndiuk, then a baker, and John Braun, a builder, acquired the subject property in November of 1962 for $6,000. Of this amount Braun paid $2,000. Hyndiuk purchased this property for the purpose of building a three-bedroom one-story brick ranch house for his son. Braun was to build this house, but he was unable to secure a building permit for it because the lot in question did not meet the density requirement of 5,000 square feet and was not a lot of record. Hyndiuk then applied to the Board of Zoning Appeals which also denied the permit. After the decision of the Board of Appeals, Hyndiuk purchased Braun's interest for $2,000.

Hyndiuk testified that, at the time he and Braun had purchased the property, he did not have an attorney. Braun did have one and Hyndiuk relied on Braun and Braun's attorney. Hyndiuk was not aware nor was he advised of any density restrictions on the construction of a residence on the lot. Indeed, he had observed other residences constructed on 25-foot lots in the immediate area. Hyndiuk further testified that he had tried to sell the property to builders and to the neighbors on the north and south sides of the subject property, but no one wanted the property. He has no use for the property other than for a residence. Hyndiuk's investment in the property consists of the initial $6,000, a $340 alley assessment, taxes for ten years, and maintenance costs to clear the vacant lot of rubbish.

Ralph Brunke, an expert witness for plaintiffs, was shown plaintiffs'

plans for a residence and testified that the building could be built on the subject property and itself would meet the side lot requirements, the rear lot requirements, and the front yard footage. In describing the neighborhood surrounding the subject property, the witness testified that there were seven residences constructed on 25 foot by 124.78 foot lots on the same block on the same side of the street as plaintiff's lot. The witness further testified that buildings such as the plaintiffs wish to build have been priced in the neighborhood at between $33,500 and $34,750. It was the witness' opinion that, if there were no density restrictions on the subject property in its unimproved condition, it would be worth $11,000. If the proposed use is allowed and the planned residence constructed, the improved lot would be worth between $33,500 and $35,000. Under the existing R2 density requirement, unless the subject property is used by either one of the adjoining owners as a yard or garden to his property, it was no value whatsoever.

Richard McKinnon, a city planner, testified on behalf of the City. It was the witness' opinion that the subject property belongs to the single-family house to the north as its side yard and should remain its side yard. The witness testified that only one single-family residence can be built on a lot of record unless the lot is of such dimensions that, if divided, each of the resulting two lots would conform to the requirements of the zoning ordinance. The witness further testified that plaintiffs' plans do not comply with the side yard requirements. (In order to comply with the ordinance a side yard of 2'6" is required. While the plans show a 2'6" side yard for the proposed construction, the house to the north is not 2'6" from the lot line but only 2'1½" at the rear and 2'4" at the front. Therefore, it is the house on the north that does not comply with the side yard requirements and not the proposed residence.)

On cross-examination of Mr. McKinnon, the point was made that brick is a superior construction material compared to frame and concrete block. The witness stated that there were no 25 foot lots of record on the west side of Nagle in the 3200 block. Three of the seven houses which had been constructed on 25 foot lots were of recent origin and should not have been allowed. The witness further testified that the neighborhood had been developed under older zoning ordinances which had required a minimum lot area of only 3,750 square feet. There are eleven single-family houses on 50 foot lots. It was the witness's opinion that if the situation developed where these owners could sell off a portion of the lots to construct another single-family home, it would not be long before the entire frontage would consist of homes on 25 foot lots. The frame homes on the block were built long before there was any zoning ordinance.

## OPINION

■■■ The sole issue on appeal is whether the trial judge erred as a matter of law in finding that the presumptive validity of the R2 density provisions in issue had been overcome and that the provisions were unconstitutional as applied to the subject property. This issue has been before the courts of this State many times and the factors which are to be considered in determining whether the presumptive validity of the ordinance has been overcome are well settled. As set forth in *La Salle National Bank of Chicago v. County of Cook* (1957), 12 Ill.2d 40, 145 N.E.2d 65, these factors are:

(1) The existing uses and zoning of nearby property;

(2) The extent to which property values are diminished by the particular zoning restrictions;

(3) The extent to which the destruction of plaintiff's property values promotes the health, safety, morals or general welfare of the public;

(4) The relative gain to the public as compared to the hardships imposed on the individual owner;

(5) The suitability of the subject property for the zoned purposes;

(6) The length of time the property has been vacant as zoned considered in the context of land development of the area in the vicinity of the subject property.

In weighing these factors, primary importance should be given to the conformity of the zoning restrictions on the subject property with existing uses and zoning restrictions applicable to surrounding properties. *Guaranty Bank and Trust Co. v. City of Chicago* (1969), 112 Ill.App.2d 378, 251 N.E.2d 384.

■■ Reviewing the record in this case in light of the factors we must consider, it is our opinion that the trial judge did not err in finding that the presumptive validity of the ordinance had been overcome.

In considering the existing uses and zoning of nearby property, we note that there are already seven homes constructed on 25 foot lots on the same (west) side of N. Nagle Avenue in the 3200 block, three of which were constructed after the enactment of the 1957 Chicago Zoning Ordinance. Furthermore, less than one-half of the lots on both sides of the 3200 block of North Nagle are constructed in conformity with the minimum lot area restrictions of the 1957 ordinance. Finally, the adjoining blocks are characterized by a low incidence of conformity to the minimum lot area restrictions of the 1957 ordinance.

In considering the extent to which property values are diminished by the particular zoning restrictions, the testimony of plaintiffs' expert was

that, if the lot could not be used for a residence, it would have no value whatsoever. Therefore, the value of the property would be not merely diminished by the enforcement of the ordinance but completely destroyed.

The health, safety, morals or general welfare of the public would not be promoted in any significant respect by the destruction of plaintiffs' property values. There would be only a minimal impact of the proposed ordinance on the two adjoining residences. We note that the owners of these residences received statutory notice of the Hyndiuk's suit and neither appeared nor objected, nor did any of the other property owners on Nagle and the adjoining streets to whom notice had been directed. Neither is it likely that the proposed residence will have a significant impact on increasing traffic, overcrowding schools, etc.

Likewise the hardship imposed upon the individual property owner here far outweighs any relative gain to the public. Hyndiuk was not an experienced builder or a shrewd real estate speculator who purchased this property at a bargain price. He paid a price commensurate with the lot's value as a homesite. He is now faced with losing his entire investment. This result is not justified when the only corresponding benefit to the public is the inflexible enforcement of the minimum lot area restriction which is at odds with so many of the surrounding improvements.

Further, there is no question that the property is unsuitable for the zoned purpose of a residence constructed on a minimum lot of 5,000 square feet. While it is true that the lot could be used as a side yard, neither of the adjoining landowners has chosen to purchase the property.

Finally, this property has been vacant since the enactment of the 1957 ordinance and in the absence of relief will continue to remain vacant. Given the nature of the neighborhood and the fact that three other 25 foot lots on the same side of the block have been improved with residences of the type which plaintiffs wish to build, we see no valid reason why under the facts of this case the lot should remain vacant at plaintiffs' expense.

Defendant argues that by affirming the decision below, we would be encouraging the owners of the other 50 foot lots on the block to sell off their 25 foot side yards. The proper way to enforce the City's police power in this regard is not to penalize an actually innocent amateur such as Hyndiuk, but to penalize the person responsible for the unauthorized resubdivision of the lot of record.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.