ALBERT R. WELCH *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF EVANSTON, Defendant-Appellant.

First District (3rd Division) No. 77-266

Opinion filed October 25, 1978.

Jack M. Siegel, Corporation Counsel, of Evanston, for appellant.

Ross S. Welch, of Chicago, for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County in which certain zoning ordinances of the City of Evanston were held unconstitutional as applied to the plaintiffs. The plaintiffs are Ross S. Welch individually and Albert R. Welch and Walter S. Welch, both individually and as trustees under the last will of Ross H. Welch. They are owners of two adjoining vacant lots located on Central Park Avenue in the City of Evanston, the defendant in this case. Each of the two lots measures 50 feet in width by 130.68 feet in depth, or 6534 square feet. The plaintiffs' vacant lots are immediately south of Park Street. On the north side of Park is the Willard School.

This controversy arises from the fact that each of the lots lacks the required area for the construction of single-family houses under the terms of Evanston's Comprehensive Zoning Amendment adopted November 21, 1960. The amended ordinance requires a lot of 7200 square feet for a single-family dwelling. At the time the lots were purchased in 1954 by the plaintiffs' father, Ross H. Welch, the zoning laws would have permitted the construction of a single-family home on each lot, this being the ultimate use contemplated by the decedent. Under the present law, only if the two lots are combined is there sufficient square footage to allow the construction of one home.

The plaintiffs filed a petition for a variation with the Evanston Zoning Board of Appeals, seeking permission to build a home on each of the lots. Following a public hearing, the Board recommended to the Evanston City Council that the variation be granted, but the City Council rejected plaintiffs' application. The plaintiffs thereupon filed a complaint seeking a declaration of their right to build a house on each lot.

The plaintiffs alleged that they had a legal right to build a house on each of the lots and that the subdivision was platted, filed of record and approved long before the adoption of the 1960 zoning amendments. They

alleged that they are being denied their property without due process of law under both the United States and the Illinois constitutions, and that the ordinances as applied are unconstitutional and void.

The City denied that the plaintiffs have a legal right to construct a house on each lot and stated plaintiffs have no vested rights merely by virtue of the fact that the lots were part of a subdivision filed prior to the adoption of the amended zoning ordinance. The defendant further denied the unconstitutionality of the ordinances as applied to the plaintiffs' property and also alleged that the plaintiffs had failed to plead any hardship other than the inability to make a greater profit if the variance were to be denied.

At the trial without a jury both parties presented expert testimony concerning the lots and neighborhood in question, and opinions as to the best use of the land. The plaintiffs' witnesses testified generally that the immediate neighborhood consists of single-family houses; that the homes are well-maintained; that the level of automobile traffic is minimal; that two additional houses would not have a material adverse effect on the traffic, public health, safety or morals of the area; and that the highest and best use of the land would be the construction of two single-family homes. The plaintiffs' experts also testified that the construction of a single home on the 100-foot combined lot would not be economically feasible, and that the public health, welfare, and availability of light and air would not be significantly enhanced if the plaintiffs were restricted to the construction of one house, rather than two.

The defendant's witnesses testified generally that the presence of two additional houses would lead to increased density, to a reduction in the amount of open space, to further congestion, to greater burdens upon the public schools, streets and public utilities and would lessen the amount of available yard space.

Evidence was also presented concerning the fair market value of the lots. The purchase price was $8500. Since the 1954 purchase, $10,105 has been paid in taxes, by the deceased father until his death in 1965, and then by the plaintiffs. One of the plaintiffs testified that the lots were worth a total of $40,000 if two houses could be built and $25,000 if a variance could not be obtained. One of the plaintiffs' expert witnesses testified that the lots were worth $24,000 and $26,500 separately, and that the total fair market value was $27,500 if only one house could be built. The lots are presently listed at $20,000 each or $40,000 for both. The circuit court found the land to be worth $27,500 if only one residence could be built and a total of $50,500 if a variance is obtained to allow the construction of two houses.

The circuit court also found that approximately 85% of the lots zoned residential and improved with single-family homes in the immediate

neighborhood (consisting of the surrounding 110 residential lots) are less than 7200 square feet in area, and that the only other unimproved lot in the neighborhood is used as a side yard by its owner. Further, the court found that 14 of the 25 lots improved with single-family homes north and south of plaintiffs' lots on Central Park Avenue are only 30 to 40 feet in width (compared to plaintiffs' 50 feet per lot), and have areas of 5000 square feet or less (compared with the plaintiffs' 6500 square feet); and that in the square block on which the plaintiffs' lots are located, only two of the eight improved lots have the now required 7200 square foot area. Two single-family residences in that square block are on lots of approximately 5227 square feet.

The circuit court concluded that the City of Evanston acted unconstitutionally in adding the amendatory ordinances to its zoning act insofar as the ordinances apply to the plaintiffs' land; that the effect of the ordinances on the plaintiffs constituted the taking of property without due process of law in contravention of the fifth and fourteenth amendments to the United States Constitution and section II of article II of the Illinois Constitution. The court also found that the amendments deny the plaintiffs the equal protection of the law and are confiscatory. The City of Evanston was directed to issue permits for one home on each of the two lots. Evanston appeals from this order entered October 28, 1976.

On appeal, Evanston argues plaintiffs were not entitled to build on each of the substandard lots by reason of prior plat approval; that plaintiffs did not overcome the presumption of validity attaching to the Evanston zoning ordinance; and that plaintiffs were not entitled to a variation under the standards of the Evanston zoning ordinance.

■■ The issue we address is whether the plaintiffs have overcome the presumption of validity attaching to the ordinance. To overcome the presumption, the plaintiffs must show the ordinance as applied to them was arbitrary, unreasonable and without substantial relation to the public health, welfare or safety and thus unconstitutional. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.) This issue has been considered by the Illinois courts on numerous occasions. The factors to be evaluated in determining whether the presumptive validity of the ordinance has been overcome are well settled. The factors are:

(1) The existing uses and zoning of nearby property;

(2) the extent to which property values are diminished by the particular zoning restrictions;

(3) the extent to which the destruction of plaintiff's property values promotes the health, safety, morals or general welfare of the public;

(4) the relative gain to the public as compared to the hardships imposed on the individual owner;

(5) the suitability of the subject property for the zoned purposes; and

(6) the length of time the property has been vacant as zoned considered in the context of land development of the area in the vicinity of the subject property.

(*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) In considering these factors, primary importance is to be given to whether the land in question is zoned in conformity with surrounding existing uses. *Ryan v. County of Du Page* (1963), 28 Ill. 2d 196, 190 N.E.2d 737; *Hyndiuk v. City of Chicago* (1973), 14 Ill. App. 3d 1057, 304 N.E.2d 6.

■■ We have reviewed the record in light of these factors and it is our opinion that the trial judge did not err in concluding that the presumptive validity of the ordinance had been overcome. A contrary result would not be justified where the only corresponding benefit to the public is the enforcement of a minimum lot area restriction which is at odds with so many of the neighboring improvements. *Hyndiuk v. City of Chicago* (1973), 14 Ill. App. 3d 1057, 304 N.E.2d 6.

The existing uses and zoning of nearby properties supports plaintiffs' position. While the entire area is now zoned for minimum lot areas of 7200 square feet, 85% of the lots in the area are substandard and only two of the eight lots on plaintiffs' square block are large enough to be in compliance. Furthermore, 14 of the 25 lots north and south of plaintiffs' land on Central Park Avenue are 30 to 40 feet in width with areas of 5000 square feet or less. Plaintiffs' lots are 50 feet wide and comprise 6500 square feet. The variance sought by the plaintiffs amounts to a little more than 9% of the area required by the ordinance. The unreasonableness of the ordinance as applied to the plaintiffs is also supported by the fact that the plaintiffs' land and a side yard elsewhere in the neighborhood are the only undeveloped lots in the area.

The next factor is the extent to which property values are diminished by the particular zoning restrictions. The testimony showed the lots to be worth between $25,000 and $50,500 depending upon whether one or two houses can be built. The trial judge found the subject property to be worth $27,500 if the 7200 square foot requirement is enforced, and $50,500 if plaintiffs are allowed to build a house on each of the two lots. It is thus clear that the value of the property would be significantly diminished by the enforcement of the ordinance.

The health, safety, morals or general welfare of the public would not be appreciably enhanced if the ordinance is enforced. The impact of two additional houses on the adjoining properties would be minimal. It is also unlikely that two additional homes will significantly affect traffic, schools or the quantities of light and air in the neighborhood.

Similarly, the hardship imposed upon the individual property owners outweighs any gain to the public. Unlike many other zoning cases, the plaintiffs did not purchase the land at a price reflecting the current zoning restrictions and with knowledge of their existence. The land has been in the hands of the Welch family since it was purchased by the plaintiffs' father in 1954. Although vacant for the intervening 24 years, the original plan was to build two homes and this could have been done in accordance with the zoning ordinance then in effect. Any gain which might inure to the public in the form of additional open space, light and air if the ordinance were enforced is minimal in comparison to the loss in property value which would be suffered by the plaintiffs.

■■ Although plaintiffs concede that it would be possible to build a single home on the combined 50-foot lots, one expert testified that this would not be economically feasible. We also note that such a home, if built, would be the only one on a lot as large as 100 feet wide in the immediate neighborhood with the exception of the home at 2651 Hurd Avenue which uses an adjoining lot as a side yard. As noted by our supreme court in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 69-70, "[t]he law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare."

We do not attach much significance to the fact that this land has been vacant since the 1964 ordinance because the evidence showed that plaintiffs have made no attempt to sell it until recent years.

The defendant relied on *Stemwedel v. Village of Kenilworth* (1958), 14 Ill. 2d 470, 153 N.E.2d 79, in its brief and at oral argument. In that case the Illinois Supreme Court found that the residence owner had failed to show that the setback requirement under consideration was arbitrary or unreasonable. We find the case distinguishable. In *Stemwedel* there was no showing that the setback requirements had been varied for other properties in the area; by contrast, the Evanston zoning law considered here would require plaintiffs to use their property in a way which would not be in conformity with surrounding existing uses.

On the basis of this holding, we do not find it necessary to reach the other issues presented by the defendant.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

SIMON and McGILLICUDDY, JJ., concur.