NATIONAL BANK OF JOLIET, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF WILL, Defendant-Appellee (Rousonelos Farms, Inc., *et al.*, Intervening Defendants-Appellees).

Third District No. 3—86—0279

Opinion filed January 27, 1987.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellants.

Scott Nemanich, Assistant State's Attorney, of Joliet (Gregory E. Fix, Assistant State's Attorney, and Richard Kavanagh, of counsel), for appellee County of Will.

John F. Wols and Richard J. Kavanagh, both of Kroesch & Kavanagh Law Office, Ltd., of Joliet, for other appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Richard and Jane Searls, plaintiffs, are in the business of buying land which they subdivide for single-family residential development. In 1977, the Searls purchased 86 unimproved acres in Will County for their business purposes, in the name of National Bank of Joliet, plain-

tiff, as trustee. At that time, the entire 86 acres were zoned by Will County as district F. This classification allowed not only agriculture and its related uses, but also single- and two-family residential development. The Searls subdivided the first 20 acres of the site into 20 lots and residential streets and designated it Williamsburg subdivision. Homes having a value of $125,000 to $200,000 were constructed on 15 of the lots. The remaining 66 acres are the subject of this litigation.

In 1978, the county adopted a comprehensive amendment to its zoning ordinance which affected plaintiffs' 66 acres in such a way that further residential subdivision development was prohibited. Plaintiffs sought to have the subject land reclassified in both 1983 and 1985 so that the site could be subdivided and developed, but the county denied the applications. The plaintiffs brought suit after the 1985 denial, seeking declaratory judgment that the zoning ordinance is unconstitutional and void as it applies to the subject property and an order enjoining the county from prohibiting or interfering with the proposed use of the property. At trial, the county moved for a directed finding at the close of the plaintiffs' case in chief. The court granted the motion and this appeal follows.

■ The plaintiffs argue that the trial court committed error in directing judgment in favor of the county. Section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110) governs motions in nonjury cases to find for the defendant at the close of the plaintiff's evidence. The supreme court case of *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, has interpreted the statute to require the trial judge to first determine, as a legal matter, whether the plaintiff has made out a *prima facie* case, *i.e.*, presented at least some evidence on every element essential to his cause of action. If not, the motion is to be granted. If the plaintiff has made out a *prima facie* case, the trial judge, in his role as the fact finder, is to weigh the evidence, including any favorable to the defendant, pass on the credibility of the witnesses, draw reasonable inferences from the testimony, and generally consider the weight and quality of the evidence. When the underlying cause of action requires the plaintiff to establish its case by clear and convincing evidence, then plaintiff's evidence must meet this higher burden of proof to avoid entry of judgment under section 2—1110. (*Heller v. Jonathan Investments, Inc.* (1986), 113 Ill. 2d 60.) If the court weighs the evidence in favor of the defendant, an order dismissing the action shall be entered. On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's

motion and proceed as if the motion had not been made. On review, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151.

 A zoning ordinance is presumptively valid, and when challenging the ordinance, the plaintiff must overcome the presumption by clear and convincing evidence. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40.) To be sustained, the validity of a zoning classification must bear a substantial relation to the public health, safety, comfort, morals, or general welfare. (*Cech Builders, Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 455 N.E.2d 817.) The supreme court in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, set out six factors that may be taken into consideration in making a determination of the validity of an ordinance, to wit: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as opposed to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. Two additional factors are also to be considered, namely: (7) the care with which the community has undertaken to plan its land use development, and (8) the evidence or lack of evidence of community need for the use proposed by the plaintiff. (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370.) The trial court's findings indicate its conclusion that the plaintiffs did not meet their burden of proving by clear and convincing evidence, that as applied to their property, the ordinance is arbitrary, unreasonable, and without substantial relationship to the health, safety, morals, or general welfare. We disagree and believe the findings were against the manifest weight of the evidence.

The evidence established that approximately 17 acres of the subject site are in a floodplain. Other than Williamsburg subdivision, the lands adjoining the subject land on the west and south are zoned A-1 (agricultural) and used for farming purposes. The land on the east is also zoned A-1 and is used for a single railroad right-of-way and farming. There is a string of 8 to 10 older, wood frame homes along the north side of Caton Farm Road, which borders the subject site to the north. A mile northeast of Caton Farm Road is Fon-du-lac subdivi-

sion.

The first witness to testify on behalf of the plaintiffs was the plaintiff, Richard Searls. He testified that the property was purchased for residential development and that it was zoned for that purpose at the time of the acquisition. He further testified that the property was being used for farming at the time of purchase and that he and his son have continued to farm it. The net income from farming the property in 1985 was $2,100, and after real estate taxes were paid, the income was reduced to $1,109.

Mr. Thomas Murphy testified on behalf of the plaintiff as an expert planning consultant. Mr. Murphy said the subject property is currently being used as farmland and is suitable for that purpose, although the land is also suitable for development. Nearby property is used for agricultural purposes and some single-family subdivisions. He was of the opinion that development as proposed by the plaintiffs would be compatible with the surrounding area and that the present zoning bears no substantial relationship to the public health, safety, morals, or general welfare. At one point, Mr. Murphy stated that development would have a positive effect on the public by adding income to the local tax base without substantial increase in service costs. At another point, Mr. Murphy testified that the development would neither provide a great benefit nor detriment to the public, because any increase in the tax base from the proposed development would be offset by the increased cost of providing essential services. However, he also noted that there is a demand for single-family lots such as the plaintiffs are proposing. When asked about the county's land use plan, Mr. Murphy stated that it was accurate and well-thought out, but the county had not necessarily followed it. On cross-examination he acknowledged that the soil types on the site create limitations to the use of septic systems because of their slow permeability.

Mr. Weitendorf, a real estate broker and appraiser in Will County for 35 years, was the next witness to testify on behalf of the plaintiffs. He was basically called by the plaintiffs to give his opinion as to the highest and best use of the subject site. He believed that the highest and best use was single-family residential development. His opinion was based on what he determined to be the market value of the property as zoned—$2,000 to $2,500 per acre—and the market value of the property if allowed to be developed as plaintiffs proposed—$6,500 to $7,500 per acre. He further stated that development would improve the surrounding areas in value and that there was a need for single-family residences. He also acknowledged that the existing use

and zoning of nearby property is essentially agricultural.

The fourth witness to testify was a professional real estate appraiser and consultant, Mr. Edward Batis. Like Mr. Weitendorf, Mr. Batis also gave his opinion as to the highest and best use of the property. He opined that the highest and best use was that proposed by the plaintiffs. He stated that the fair market value of the property with its uses limited to agriculture was $1,400 to $2,000 per acre. If allowed to be developed according to plaintiffs' proposal, the fair cash market value would be $7,500 to $8,500 per acre. He further testified that development of the parcel would have no detrimental effect on the value of adjoining properties and that there was a need for this type of development in the area. On cross-examination it was elicited that the soils on the site were good quality agricultural soils that would pose some limitations to residential development.

Norman Claassen, a licensed professional engineer and registered land surveyor, was the next witness to testify. Mr. Claassen worked on several subdivisions in Will County as an engineer, including the Williamsburg subdivision. He also prepared the site plan for the proposed subdivision taking to account the requirements of the county's subdivision ordinance, the various soils of the property and their permeability, and the floodplain. He designed four storm water detention areas on the property to alleviate possible flooding, provide drainage to both on- and off-site property, and improve the suitability of the soil for septic fields. One of the detention facilities was a lake, approximately six acres in size. The excavation from the lake will be used to build up the lots, making them three feet higher than the lake, again improving drainage and decreasing the groundwater table on those lots. In his opinion, the storm water detention facilities would adequately serve the proposed development and were in accordance with the county requirements.

Finally, the plaintiffs called James Gibbons, a civil engineer employed by the county since 1980 with general responsibility for review of subdivision plans, as an adverse witness. He first explained that engineering plans for storm water drainage are not required at the time of a zoning application under the zoning ordinance. The plans are required at the time of the submission of a proposed residential subdivision. Thus, plaintiffs' plans did not have to be in final form at this stage of the proceedings. Mr. Gibbons reviewed the subdivision plans prepared by Mr. Claassen to determine whether adequate provisions had been made for storm water detention on the subject property. Mr. Gibbons determined that the facilities were adequate and agreed with Mr. Claassen's calculations. He then sent a memo to Mr. John

Gallagher, the county director of development at that time, stating that the facilities were adequate and exceeded the requirements of the county subdivision ordinance by three times. Mr. Gallagher, in turn, sent a letter to the plaintiffs' attorney stating that the storm water drainage calculations submitted by Mr. Claassen exceeded the county subdivision ordinance by three times. The letter went on to inform the plaintiffs' attorney that the site is regarded as highly productive farmland, that approximately 25% to 30% of the site is in a floodplain and that the site has a low rating potential for properly functioning septic fields.

We believe the evidence weighed substantially in favor of the plaintiffs. The first factor to consider is the existing uses and zoning of nearby property. Although the existing uses and zoning of nearby properties are essentially agricultural, there are some residential uses, and more importantly, plaintiffs' property was zoned for residential use when first acquired. The pertinent testimony on this point was that residential development would be compatible with surrounding properties. We believe this factor weighs in plaintiffs' favor.

The second factor which the court must consider is the extent to which property values are diminished by the particular zoning restriction. The trial court noted that the net income for 1985 was $2,100 less real estate taxes of $991, leaving $1,109. The court failed to note the testimony of two of plaintiffs' witnesses, that the highest and best use for the subject land was single-family residential development. Mr. Weitendorf testified that the market value of the property if its use remained agricultural would be between $2,000 and $2,500 per acre. If allowed to be developed as proposed, the market value of the land would be between $6,500 and $7,500 per acre. Mr. Batis' testimony on this point valued the land used for agricultural purposes at $1,400 to $2,000 per acre, whereas if developed the value would be $7,500 to $8,500 per acre. The amended zoning ordinance therefore diminishes the property values a minimum of $4,500 per acre and a maximum of $7,100 per acre. Multiplying the maximum loss per acre by 66, the total number of acres in question, the maximum diminished value would be $468,600. We believe that this factor alone greatly favors plaintiffs.

The third factor the court is to consider is the extent to which the destruction of property values of plaintiff promotes the health, safety, morals, or general welfare of the public. It has frequently been said that zoning ordinances must bear a substantial relationship to the public health, safety, and welfare. This is because " 'a property owner has the right to expect that the classification imposed by the original zoning ordinance will not be changed unless such is required for the

public good.' " [Citations.] (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 533.) Here, we find that the classification of the land when acquired by the plaintiff was changed with no apparent justification. No one testified that the new ordinance benefitted the public in any way. In fact, three witnesses testified that the use proposed by the plaintiffs would benefit the public because there was a need for single-family residential development. This factor, too, weighs heavily in plaintiffs' favor.

The fourth criteria the court must consider is the relative benefit to the public as opposed to the hardship imposed on the individual property owner. The testimony of witness Murphy was somewhat conflicting on this matter. At one point, he testified that while the current agricultural use is not a very productive use, there would be no great benefit to the public if the site were developed as proposed because the increased tax base would be "washed out" or neutralized by offsetting the demands of fire, police, school, and other services. At another point, Mr. Murphy stated that development would benefit the public by adding income to the local tax base without a substantial increase in service costs. Mr. Weitendorf believed that the contemplated development would improve the general area and enhance the value of surrounding property, assuming that the engineering obstacles could be overcome. Mr. Batis also testified that the development would have no detrimental effect on surrounding land uses. Again, there was no testimony on the benefit ensuing to the public as a result of the county's amended zoning ordinance. Even assuming that the benefit to the public would be neutralized if plaintiffs were allowed to develop, this factor still weighs in plaintiffs' favor, due to the hardship imposed on the plaintiffs if they are not allowed to develop.

■ The fifth factor is the suitability of the subject property for the zoned purposes. The testimony on this point as a whole indicates that the soil on the property is high quality agricultural soil, which poses no obstacles for farming uses, whereas it does pose engineering difficulties for residential development. However, "[t]he law does not require that the subject property be totally unsuitable for the purposes classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare." (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48.) We believe the evidence presented by the plaintiffs establishes a substantial decrease in the value of the land resulting from the present classification, which was shown to have little, if any, relation to the public welfare.

Even assuming that the zoning classification was amended to pro-

tect the public from problems related to possible flooding, we do not believe the classification is substantially related to the public welfare. Land uses should not be restricted simply because development presents challenging engineering problems. Otherwise, we would see very little developmental progress. Mr. Claassen testified concerning the plan he has developed to deal with the problems presented by plaintiffs' land. This plan met with the approval of Mr. Gibbons, the county civil engineer responsible for reviewing such plans. More importantly, the final solutions to the engineering problems do not have to be presented at the time of a zoning application, which ultimately concerns us here, but only when a preliminary plot of subdivision is submitted for approval. At that time, any concerns relating to the public's general welfare can be dealt with. Thus, this factor also weighs in plaintiffs' favor.

The sixth criteria is the length of time the property has been vacant as zoned considered in the context of land development in the area of the vicinity of the subject property. For as long as anyone testifying knew, the subject land has been used as farmland. Still, it is part of a larger 86-acre tract that was zoned for residential development when it was acquired in 1977. Before the adoption of the amended zoning ordinance, the first 20 acres were developed in the same manner as now proposed. There has been little other development in the vicinity of the subject property. We do not view this factor as favorable to either the plaintiffs or defendant.

The seventh factor is the care with which the community has undertaken to plan its land use development, and again, the conclusion here is favorable to neither party. Mr. Murphy was the only witness to testify on this point. Although he stated that the land use plan was "accurate and well-thought out," he also pointed out that the county had not always conscientiously followed the plan. For example, the county initially designated all land not used for other purposes for agricultural use. This restriction was designed to preclude development where no central water and sewer facilities existed until central sanitary sewer districts on a county-wide basis became available. However, the county never followed through with the central facilities. The county has rezoned substantial portions of land designated for agricultural use to residential classifications for single-family development.

Finally, the court considered the evidence or lack of evidence of community need for the use proposed. The trial court found some need for the proposed development, but not a compelling need. We disagree with this conclusion and believe the plaintiffs established the

need by clear and convincing evidence. Three witnesses testified on this point, Mr. Murphy, Mr. Weitendorf, and Mr. Batis; all three stated that there is a need for single-family lots of the type proposed by the plaintiffs.

Under the facts of this case as presented at trial, we are of the opinion that plaintiffs established by clear and convincing evidence that as applied to their property, the ordinance is unreasonable, arbitrary, and without substantial relationship to the health, safety, morals, or general welfare. This is based only on the evidence presented by the plaintiffs since the finding was made at the conclusion of plaintiffs' case. In our opinion the trial court should not have directed a finding in favor of the county.

In accordance with Supreme Court Rule 366(b)(3)(iii) (87 Ill. 2d R. 366(b)(3)(iii)), we reverse and remand this cause with directions to proceed as if the finding had not been made in order to allow the trial court to decide this case on the totality of the evidence presented.

Reversed and remanded with directions.

STOUDER and WOMBACHER, JJ., concur.