La GRANGE STATE BANK, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF GLEN ELLYN, Defendant-Appellee.

Second District   No. 2—91—0436

Opinion filed April 22, 1992.

Altheimer & Gray, of Chicago (Jack M. Siegel, of counsel), for appellants.

Mark A. Balkin, of Ancel, Glink, Diamond & Cope, P.C., of Chicago (Ronald S. Cope, of counsel), and O'Reilly, Cunningham, Norton & Mancini, of Wheaton (James L. DeAno, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, La Grange State Bank, as trustee for Galvin and Ruth Ann Kennedy, appeal after the trial court granted defendant's, Village of Glen Ellyn's (Village's), motion for judgment at the close of plaintiffs' case. Plaintiffs sought a declaratory judgment stating that a Village zoning ordinance invalidly prevented plaintiffs from building a single-family residence on their property. Plaintiffs also sought damages and attorney fees under the Civil Rights Act (42 U.S.C. §1983 (1988)). The issues on appeal are whether: (1) the zoning ordinance allows residential construction on plaintiffs' lot; (2) plaintiffs were entitled to a variation of the zoning ordinance; (3) the application of the zoning ordinance violated section 1983 of the Civil Rights Act; (4) the trial court erred in granting judgment for the defendant; and (5) plaintiffs were entitled to a judgment pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)) for defendant's failure to comply with discovery requests. We affirm.

The subject property is located at 147 Exmoor Avenue in Glen Ellyn, Illinois, and is part of the Roosevelt Gardens subdivision, which was platted in 1921. The lot is 50 feet wide and has an area of 6,250 square feet. In September 1973, the lot in question was purchased by a joint venture that included Galvin Kennedy. Kennedy testified that he made the purchase but was reimbursed by other participants in the joint venture. The property was put into trust. At the time of this purchase, the applicable Glen Ellyn zoning ordinance allowed construction of single-family houses on lots not less than 8,712 square feet with a lot width not less than 66 feet. The zoning ordinance also stated in another section:

"F. CONTROL OVER USE

No building or premises shall hereafter be used or occupied, and no building or structure, or part thereof, shall be erected,

raised, moved, reconstructed, extended, enlarged or altered, except in conformity with the regulations herein specified for the district in which it is located, except that in Residence Districts a lot *in an ownership which was of record in the Recorder's office of Du Page County at the time of adoption of this ordinance,* even though not meeting the requirements of this ordinance as to area and width, may be used for single-family residence purposes, provided the use conforms with all other regulations of the district in which it is located." (Emphasis added.) Glen Ellyn, Ill., Zoning Ordinance 1319 (1967).

Problems within the joint venture resulted in litigation beginning in 1977. In 1986, the joint venture was ordered by the court to sell the lot and another lot owned by the group at a sheriff's sale and to divide equally the net proceeds between Galvin Kennedy and the other members, the Millers. Galvin testified that the lot in question was purchased at the sale by him through a "nominee." The lot was purchased for $30,000, and Galvin Kennedy received $11,477.63 back pursuant to the court order. Later in 1986 the lot was acquired by Mrs. Kennedy and placed in the current land trust with the Kennedys as beneficiaries. Galvin testified that he never paid real estate taxes on the property until the lot was put into the present trust in 1986. The zoning ordinance in effect at this time also required residential lots to be at least 66 feet wide and 8,712 square feet in area to be buildable.

In the summer of 1988, the Kennedys sought a building permit to construct a single-family residence on the property. The plan called for a house of approximately 2,000 square feet. They were told by the Village that the plans did not comply with the zoning ordinance and that they would have to apply for a variation. The Kennedys attempted to purchase 16 additional feet of property from neighboring property owners to comply with the 66-foot width requirement in the zoning ordinance. The Kennedys' attempts were unsuccessful.

On or about December 14, 1988, the Kennedys also applied for a variation. After a hearing before the Zoning Board of Appeals, the Board recommended that a variation be denied. On April 10, 1989, Village officials adopted Ordinance No. 3610 denying the variation. The plaintiffs then brought this action on July 11, 1989, seeking a declaratory judgment that the zoning ordinance had been invalidly applied to plaintiffs' property and claiming that the Village's decision constituted a taking without just compensation in violation of section 1983 of the Civil Rights Act.

On March 13, 1991, defendant filed a motion to continue the trial. According to defendant's motion, plaintiffs propounded their first set of interrogatories to defendant on January 31, 1991, six weeks before trial. Plaintiffs sought, among other things, copies of all ordinances granting variations from specific sections of the zoning ordinance and related Zoning Board of Appeals reports from October 1974 to the present. Defendant stated that it needed more time to procure the information to satisfy the discovery request. The trial record reflects that plaintiffs objected to the continuance and defendant's motion was denied.

The trial commenced on March 18, 1991. Plaintiffs made a motion for judgment at the beginning of the trial based on defendant's alleged failure to comply with discovery. Defendant acknowledged in its answers to interrogatories that 49 variations had been granted by the Village for lots less than 66 feet wide and 8,712 square feet in area, 45 of those in the Roosevelt Gardens subdivision. However, defendant only produced 16 of those ordinances, and only 10 from the Roosevelt Gardens subdivision. The trial court denied plaintiffs' motion for judgment and the trial proceeded.

At the close of plaintiffs' evidence on March 21, defendant made a motion for judgment pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110), which the trial court granted. Plaintiffs filed a timely notice of appeal.

■ As a preliminary matter, we address the defendant's motion to strike portions of plaintiffs' reply brief. Defendant argues that Supreme Court Rule 341(e)(7) provides that the arguments in a brief shall contain citations to the pages relied on in the record. (134 Ill. 2d R. 341(e)(7).) Indeed, Supreme Court Rule 341(e)(6) (134 Ill. 2d R. 341(e)(6)) provides that the statement of facts shall contain appropriate references to the record. Also, Supreme Court Rule 341(g) (134 Ill. 2d R. 341(g)) provides that the reply brief shall be confined strictly to replying to the appellee's arguments. We find the "Introduction" section in plaintiffs' reply brief to be an attempt to recite the facts of the case. We grant defendant's motion to strike this material pursuant to Supreme Court Rules 341(e)(6) and 341(g). 134 Ill. 2d Rules 341(e)(6), (g); *Finance American Commercial Corp. v. Econo Coach, Inc.* (1981), 95 Ill. App. 3d 185, 186.

Plaintiffs first contend that the zoning ordinance as written allows them to build on their 50-foot-wide lot. They cite a clause in the amendment to Zoning Ordinance No. 1319, dated March 31, 1967, which states that an exception to the ordinance is recognized for lots "in an ownership which was of record in the Recorder's office of Du

Page County at the time of adoption of this ordinance, even though not meeting the requirements of this ordinance." Plaintiffs argue that since their lot was recorded as part of the subdivision in 1967, they come within the stated exception. They cite *Lubershane v. Village of Glencoe* (1978), 63 Ill. App. 3d 874, in support of their argument.

Plaintiffs' argument is flawed due to their interpretation of the clause in question. The clause of the zoning ordinance will be analyzed in accordance with the rules of statutory construction. (See *In re Application of the County Collector* (1989), 132 Ill. 2d 64, 72.) Courts must give the language its plain and ordinary meaning, primarily considering the language itself. (*People v. Madison* (1988), 121 Ill. 2d 195, 200-01.) A primary rule of construction is to ascertain and give effect to the intent of the drafter. (*People v. Bryant* (1989), 128 Ill. 2d 448, 454-55.) Intent which can be ascertained by the language must be given effect without resorting to other methods of construction. *Bryant*, 128 Ill. 2d at 455.

The clause in the zoning ordinance clearly states that the *ownership* was to be recorded at the time the ordinance was adopted. Plaintiffs' interpretation of the clause fails to consider the plain meaning of the word "ownership." Plaintiffs were not owners of the lot at the time the ordinance was adopted. Thus, they do not come within the language of the clause.

Plaintiffs assert that the clause has no useful purpose if construed to allow the exception only for the party who owned the property in 1961, the time the original ordinance was adopted. We believe that the clause is useful as presently interpreted. Among other reasons, the "grandfather" clause allows parties who owned the property at the time the ordinance was adopted to be automatically exempt from compliance without seeking a variation.

Also, plaintiffs' reliance on *Lubershane v. Village of Glencoé* is misplaced because the exception to the zoning ordinance was different in that case. The exception included *lots* which had "been duly recorded in a plat or deed prior to April 9, 1931." (*Lubershane*, 63 Ill. App. 3d at 877.) The exception in the case at bar included lots *in an ownership* that was recorded at the time the ordinance was adopted. Although the Village of Glencoe argued for the same interpretation of the clause in *Lubershane* that we found in the clause here, the court there found that the intended meaning of the municipal legislators was not evident in the clear meaning of the ordinance. (63 Ill. App. 3d at 878.) Here, the clear meaning of the ordinance is to exempt record *owners* of the lot at the time the ordinance was adopted.

■ Finally, we note that plaintiffs base their argument on the assumption that they have owned the lot since 1973. We find this notion to be tenuous. The record owner of the property in 1973 was the joint venture which included Kennedy and the Millers. Kennedy testified that he purchased the lot for the joint venture, but was subsequently reimbursed by the Millers. The property was then put into trust. It was not until the sheriff's sale in 1986 that the property was put into trust with the Kennedys as beneficiaries. The Kennedys did not pay taxes on the property until 1986.

"The key elements of ownership are control and the right to enjoy the benefits of the property." (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 489.) Illinois law recognizes that the owner of the property may not be holding the title to the property. (*Chicago Title*, 75 Ill. 2d at 493.) The party who is in control and benefitting from the property is the party responsible for paying real estate taxes. *Chicago Title*, 75 Ill. 2d at 489-90.

We find little evidence to support plaintiffs' contention that they have owned the property since 1973. Of greatest significance to this court is the fact that the Kennedys did not pay real estate taxes on the lot until 1986. No other evidence is presented to show that the Kennedys controlled or benefitted from the property from 1973 until the sheriff's sale was ordered. It was not until 1986 that the lot was placed in the Kennedys' name. Thus, we will analyze plaintiffs' remaining contentions only as they relate to the Kennedys' ownership of the lot after the sheriff's sale in 1986.

■ Plaintiffs' second contention is that they were entitled to a variation even if the ordinance prevented construction of a single-family residence on their lot. Plaintiffs argue that they satisfied the factors enumerated in *Welch v. City of Evanston* (1978), 65 Ill. App. 3d 249, for determining whether the presumptive validity of the ordinance has been overcome. The factors listed in *Welch* are:

"(1) The existing uses and zoning of nearby property;

(2) the extent to which property values are diminished by the particular zoning restrictions;

(3) the extent to which the destruction of plaintiff's property values promotes the health, safety, morals or general welfare of the public;

(4) the relative gain to the public as compared to the hardships imposed on the individual owner;

(5) the suitability of the subject property for the zoned purposes; and

(6) the length of time the property has been vacant as zoned considered in the context of land development of the area in the vicinity of the subject property." (*Welch*, 65 Ill. App. 3d at 252-53.)

The factor of primary importance is the first factor: the existing uses and zoning of nearby property. (*Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 760.) The party challenging the ordinance has the burden to show by clear and convincing evidence that the application of the ordinance is unreasonable, arbitrary, and bears no substantial relation to public health, safety or welfare. *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 310.

We have reviewed the record in accordance with the factors above and find that plaintiffs failed to show by clear and convincing evidence that the zoning ordinance was unreasonably and arbitrarily applied to them.

■ The existing uses and zoning of nearby property factor favors the Village. William Hansen, a building and zoning official for the Village, testified that he found no variations granted for 50-foot-wide lots in the cul-de-sac streets north of Fairview Avenue, the neighborhood in which the subject lot is located. He further testified that the neighborhood north of Fairview and the neighborhood south of Fairview, the area in which many of plaintiffs' comparison lots and houses are located, are significantly different. Generally, the houses south of Fairview are smaller houses on the smaller, 50-foot-wide lots, whereas the houses north of Fairview are larger homes on larger lots. The houses on plaintiffs' block are built on lots with widths of 150, 110, 100, 80, 70 and 60 feet. The 60-foot-wide lot is a corner lot in which the house faces the cross-street, Fairview Avenue.

It is reasonable for the Village to use a street as a line of demarcation when applying a zoning ordinance. (See *Homeowners Organized to Protect the Environment, Inc. v. First National Bank* (1988), 167 Ill. App. 3d 714, 726.) The complexion of the neighborhoods north and south of Fairview Avenue appears to be significantly different. We find Fairview Avenue to be a reasonable line of demarcation and find the first factor, the factor of primary importance, to favor the Village.

■ The second factor, the extent to which property values are diminished by the zoning restriction, does not clearly favor the plaintiffs. They argue that the lot is worth $85,000 if buildable and is "totally unusable and worthless" if unbuildable. They also posit that it is unlikely that anyone would buy the property if it is unbuildable. How-

ever, we note that one of the Kennedys' neighbors made an inquiry about purchasing the property in response to the Kennedys' offer to buy eight feet of the neighbor's property.

Also, there is no evidence that the value of the property has diminished from the time plaintiffs purchased the lot. "[I]t is not determinative that the property would be worth more if the zoning were reclassified because this would be true in virtually all reclassification cases." (*Glenview State Bank*, 213 Ill. App. 3d at 761.) Although this is not a reclassification case, the principle stated is applicable here. We find it significant that plaintiffs have only approximately $18,500 invested in this property—the $30,000 paid through the nominee minus the $11,477 paid to Kennedy pursuant to the court order. No evidence has been presented to show that the property is now worth less than the $18,500 plaintiffs have invested in the property. As such, we cannot say that plaintiffs have proven the second factor.

■ The remaining factors were either briefly discussed with no citation to any authority or were completely ignored by plaintiffs. However, we choose to address the remaining points we deem of particular relevance. Plaintiffs argue that there is no gain to the public as compared to the hardship imposed on them. However, we believe that the public does benefit from the zoning ordinance. Minimum lot area limitations may be imposed by municipalities. (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1.) Minimum lot area and width limitations help to sustain neighboring property values and promote the health and welfare of the public by preventing overcrowding and overuse of public services such as sewer and water. Also, plaintiffs have failed to show the hardship imposed on them. They have not proven that the lot is worth less than they paid for it if subject to the zoning ordinance. In fact, an expert testifying on plaintiffs' behalf estimated that the value of the property if unbuildable is approximately 25% of the $85,000 estimate as buildable property. This figure is nearly equivalent to the amount plaintiffs have invested in the lot. As such, we find no hardship imposed on plaintiffs because of the zoning ordinance. We fail to see the loss of a projected substantial profit as a hardship.

The cases relied upon by plaintiffs to support their argument for a variation are all distinguishable. In *Wolfe v. Village of Riverside* (1965), 60 Ill. App. 2d 164, *Ziman v. Village of Glencoe* (1971), 1 Ill. App. 3d 912, and *Makel v. Zoning Board of Appeals* (1971), 2 Ill. App. 3d 360, the courts had to determine whether a side-yard zoning restriction was validly applied to the respective property owners. These cases are distinguishable on their facts because the lots were all buildable lots. The only question presented in each case was the side-yard

requirements. Here, not only might plaintiffs be violating the side-yard requirements, but also they would be violating the area and width requirements which are the principal restrictions that are challenged.

The cases of *Gibson v. Village of Wilmette* (1981), 97 Ill. App. 3d 1033, and *Welch* (65 Ill. App. 3d 249) both concern the issue of whether a lot is buildable, but are distinguishable because the property owners in each case purchased the land *before* the zoning ordinance was passed. Here, plaintiffs voluntarily purchased the lot in 1986 when they knew or should have known that the zoning restriction was applicable to that lot. *Welch* is also distinguishable because neighbors on the same block had built homes on lots with the same width as the *Welch* lot. This is not the case here.

Finally, the case most closely related factually, *Hyndiuk v. City of Chicago* (1973), 14 Ill. App. 3d 1057, is distinguishable because houses on the same side of the street and the same block were built on lots as wide as the lot owned by Hyndiuk. Also, three of those houses were constructed after the new ordinance was enacted. (*Hyndiuk*, 14 Ill. App. 3d at 1060.) Here, no variations had been given by the Village to property owners on cul-de-sac streets, and no houses on plaintiffs' street or block, which is north of Fairview Avenue, are built on 50-foot-wide lots.

We find that plaintiffs failed to overcome the presumed validity of the zoning ordinance by clear and convincing evidence. A majority of the factors enumerated in *Welch* favored the actions of the Village. As such, plaintiffs failed to show that they were entitled to a variation from the zoning ordinance.

Plaintiffs' third contention is that the application of the zoning ordinance to their property violates section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1988)). Plaintiffs rely principally on *Nollan v. California Coastal Comm'n* (1987), 483 U.S. 825, 97 L. Ed. 2d 677, 107 S. Ct. 3141, and *First English Evangelical Lutheran Church v. County of Los Angeles* (1987), 482 U.S. 304, 96 L. Ed. 2d 250, 107 S. Ct. 2378, to support their argument that there is a taking even if the land use regulation is validly applied to the property. Plaintiffs also argue that the Village's refusal to grant a variation deprived them of their property without due process of law.

We find plaintiffs' taking argument to be tenuous. When plaintiffs purchased the lot in 1986, the zoning ordinance stated that no residential construction could occur on a lot less than 66 feet wide. Plaintiffs did not fall under the exception for lots in an ownership recorded at the time the ordinance was adopted. Defendant correctly

states that both the *Nollan* and *First English* cases are distinguishable because the parties bringing the actions owned the property at the time the land use restriction was adopted.

Further, plaintiffs' claim that the Village violated their due process rights is unsupported by the evidence. A due process violation occurs when the governmental body, in this case the Zoning Board of Appeals, acts in an arbitrary and capricious manner in denying a variation. (See *Sternaman v. County of McHenry* (N.D. Ill. 1978), 454 F. Supp. 240, 245.) The standard to determine whether the presumption of the zoning ordinance's validity has been overcome is the same basic standard to determine whether a due process violation has occurred. (*Sternaman*, 454 F. Supp. at 250.) We have already shown that plaintiffs failed to overcome the presumed validity of the zoning ordinance. Thus, we find that plaintiffs did not prove their case for damages under section 1983 of the Civil Rights Act.

Plaintiffs next contend that the trial court erred in granting judgment for defendant at the close of their case. Plaintiffs cite *National Bank v. County of Will* (1987), 151 Ill. App. 3d 957, as authority for the test to determine if a plaintiff has proven a *prima facie* case. In a zoning action, the test is whether plaintiffs have overcome the presumption, by clear and convincing evidence, that the ordinance promotes the health, safety, comfort, and general welfare of the public. (*County of Will*, 151 Ill. App. 3d at 960.) The trial court's decision to direct a judgment will not be reversed unless it was against the manifest weight of the evidence. *County of Will*, 151 Ill. App. 3d at 960.

■ The test to determine whether a directed judgment should be entered is the same test to determine whether plaintiffs have proven their entitlement to a variation. Having already held that plaintiffs failed to overcome the presumption of the zoning ordinance's validity, we hold that the trial court did not err in directing judgment for defendant.

Plaintiffs' final contention is that their motion for judgment should have been granted because defendant failed to comply with discovery requests pursuant to Supreme Court Rule 219 (134 Ill. 2d R. 219). Defendant claims that they did not have enough time to gather the extensive information plaintiffs requested. Also, defendant claims that plaintiffs were dilatory by waiting until six weeks before trial and 18 months after their complaint was filed to file their first set of interrogatories.

Supreme Court Rule 219(c) provides that if a party unreasonably refuses to comply with discovery, the court may, among other remedies, grant a judgment by default against the offending party. (134 Ill.

2d R. 219(c).) Imposing sanctions is a matter within the trial court's discretion and should not be disturbed on review unless the court abused its discretion. (*Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 196.) The purpose of the sanctions is to effect discovery, not to punish the uncooperative party. *Kubian*, 178 Ill. App. 3d at 196.

■■■ We find that the trial court did not abuse its discretion in refusing to grant judgment for plaintiffs. Among other requests, plaintiffs asked the Village to state the number of lots in the Roosevelt Gardens subdivision that are less than 66 feet wide and of an area less than 8,712 square feet for which building permits have been granted. This required the Village to search through 70 years of documents since the subdivision plat was filed in 1921. We also find it significant that plaintiffs objected to defendant's motion to continue the trial so the Village could continue its search for information. Defendant displayed good faith in attempting to satisfy plaintiffs' discovery requests before trial.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and NICKELS, JJ., concur.