LASALLE NATIONAL BANK, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE CITY OF HIGHLAND PARK *et al.*, Defendants-Appellees.

Second District   No. 2—02—1012

Opinion filed September 29, 2003.—Modified on denial of rehearing October 31, 2003.

O'MALLEY, J., dissenting.

Susan Marie Connor, of Chicago, for appellants.

Steven M. Elrod, Robert C. Newman, and Elliot M. Regenstein, all of Holland & Knight, L.L.P., of Chicago, for appellees City of Highland Park and Zoning Board of City of Highland Park.

JUSTICE BYRNE delivered the opinion of the court:

Plaintiffs, LaSalle National Bank, as trustee of trust No. B8000213124, and Esther P. and Ronald Z. Emmerman, appeal the judgment of the circuit court of Lake County in dismissing their four-count complaint against defendants, the City of Highland Park (City), and the Zoning Board of Appeals of the City of Highland Park (Board), *et al.* We affirm.

## FACTS

In 1968, plaintiffs Esther P. and Ronald Z. Emmerman purchased two lots at 1635 Eastwood Avenue and 1634 Sherwood Avenue in Highland Park. The property consists of two separately platted, contiguous zoned lots, each consisting of 15,415 square feet in area. At the time plaintiffs purchased the property, a single-family home was constructed on the Eastwood lot and the Sherwood lot was vacant. Also at that time, the minimum lot size for all lots in plaintiffs' zoning district was 40,000 square feet. Before plaintiffs purchased the property, the City's zoning ordinance did not permit, and it continues to deny permission for, the separation of contiguous undersized lots that are held under the same ownership. Section 150.104(A) of the Highland Park Zoning Ordinance of 1997 provides, in relevant part:

> "When two or more parcels of land (which may contain a lot or lots of record), are adjacent and one or more of such parcels lack adequate area or width to qualify for a permitted use under the requirements of the zoning district in which such parcels are located, all of such parcels shall be maintained and used as one zoning lot for such use if such parcels have been held in contiguous ownership at any time after May 8, 1960 ***." Highland Park Zoning Ordinance § 150.104(A) (1997).

The provision effectively prevented the building of a single-family home on the Sherwood property.

After plaintiffs acquired the property, the City reduced the minimum lot size zoning requirements for plaintiffs' zoning district to 12,000 square feet. During this time, the City permitted the subdivision of land two lots to the north of plaintiffs' property. These lots are approximately 12,000 square feet and the City granted permission for single-family homes to be built on each lot. However, in April 1970, the City increased the minimum lot size zoning requirements for plaintiffs' zoning district to 20,000 square feet. This lot size restriction has remained to this day.

It is undisputed that the entire parcel is located in zoning classification district R-4, a different district from the lots across the street from the Sherwood lot to the east, which are zoned R-6. The R-4 zoning district contemplates much larger lot sizes and open park land than the R-5 and R-6 zoning districts that surround the R-4 district.

On March 29, 2001, plaintiffs filed a petition requesting a variance to permit the separation of the two lots held in common ownership to allow the development of a single-family home on the Sherwood lot. Following a hearing, the Board found that the openness created by the R-4 district serves a public purpose and should be preserved. The Board also found that plaintiffs did not meet their burden of proving each of the necessary elements required to obtain a variance and voted to deny the petition.

Plaintiffs filed a four-count complaint for administrative review and injunctive relief. The first count seeks judicial review of the Board's decision to deny the variance, and the remaining counts challenge the City's zoning regulation on constitutional grounds. Specifically, in counts II, III, and IV, respectively, plaintiffs claim that the City's zoning regulation, which prohibits plaintiffs from separating the lots and building a single-family home on the Sherwood lot, is unlawful and unconstitutional under the "takings" clause and the equal protection clause of the state and federal constitutions.

The circuit court found that the Board's decision in denying the variance was not against the manifest weight of the evidence and affirmed the order of the Board as to count I of plaintiffs' complaint for administrative review. The circuit court also granted the City's motion to dismiss counts II, III, and IV of plaintiffs' complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)). Plaintiffs timely appeal.

## ANALYSIS

### 1. Administrative Review Claim

■ Plaintiffs first contend that the Board erred in failing to grant them a variance to build a single-family home on the Sherwood lot. Before turning to the merits of plaintiffs' contention, we first review the applicable standards regarding the review of a decision made by a local zoning board. Under the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 2000)), we review the final decision of the administrative agency and not the decision of the circuit court. *Hercules, Inc. v. Department of Revenue*, 324 Ill. App. 3d 329, 335 (2001). We consider all questions of law and fact presented by the record (735 ILCS 5/3—110 (West 2000)), and the standard of review applied by

this court turns on the proper characterization of questions presented. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998).

■ Deference is afforded the agency's findings of fact and they will not be disturbed unless against the manifest weight of the evidence. *City of Belvidere*, 181 Ill. 2d at 204. Unless we are able to conclude that the agency's findings of fact are against the manifest weight of the evidence, we must accept those findings as *prima facie* true and correct. 735 ILCS 5/3—110 (West 2000); *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 185 (2000). Agency determinations involving mixed questions of fact and law are also provided a degree of deference and are reviewed pursuant to a clearly erroneous standard. *City of Belvidere*, 181 Ill. 2d at 205. Determinations of law, conversely, are not afforded deference and are reviewed on a *de novo* basis. *City of Belvidere*, 181 Ill. 2d at 205.

■ The party seeking the variance must present affirmative evidence to prove each of the necessary elements required to obtain a variance, even in the absence of opposition. *Weinstein v. Zoning Board of Appeals*, 312 Ill. App. 3d 460, 464 (2000). Because plaintiffs must prove each of the elements required to obtain a variance, if the manifest weight of the evidence shows that plaintiffs failed to prove any one of the necessary elements, we must affirm the board's decision.

Plaintiffs contend that they proved all of the elements necessary to satisfy the standards for a variance, including that they could not make a reasonable return on their investment absent a variance. We disagree.

Section 150.104(A) provides that the Board must evaluate all variance requests under the factors set forth in section 150.1205 of the Highland Park Zoning Ordinance, and, further, that no request for a variance regarding lots held contiguously per section 150.104(A) shall be granted unless additional criteria are met. Section 150.1205(A)(1) provides, in pertinent part, that the Board shall not grant a variance unless, based on the evidence presented at the hearing, it finds:

"(1) [t]he property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations of the zoning district in which it is located; however, the purpose of the variation is not based exclusively upon a desire to make more money from the property." Highland Park Zoning Ordinance § 150.1205(A)(1) (1997).

■ Plaintiffs contended at the hearing, and now on appeal, that they would lose money if they were not allowed to separate the two lots and to develop a single-family home on the Sherwood lot. Plaintiffs

asserted, in their testimony at the hearing, that of the $45,000 purchase price for the two lots, they intended to apportion a value of $20,000 to the Sherwood lot, and they cannot make a reasonable return on that investment unless a variance is granted to allow them to build on the Sherwood lot. Plaintiffs base their argument on the assumption that the Board was required as a matter of law to treat the Sherwood lot as a separate investment.

In *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863 (1993), we chose to view the plaintiff's property not as three distinct segments, as the plaintiff in that case wanted us to; rather, we chose to view the subject lots together as an entire parcel, as this was supported by the well-pleaded facts that the entire parcel was purchased as a single unit at one time. We concluded as a matter of law that the allegations of the plaintiff's complaint failed to allege any substantial deprivation of an economically viable use, thus defeating its claim. *Tim Thompson*, 247 Ill. App. 3d at 888.

In this case, the evidence reveals that the Eastwood and Sherwood lots were purchased in a single transaction for a single price. Similar to *Tim Thompson*, because the lots were purchased together, the Board could likewise legally treat them as a single parcel for purposes of determining economic expectations. The claim that Ronald apportioned $20,000 of the purchase price for the vacant lot and that his testimony was uncontroverted is an issue of credibility and weight, which we may not review. See *Weinstein*, 312 Ill. App. 3d at 466.

Moreover, the record demonstrates that plaintiffs have received a reasonable return on their entire parcel. Here, the evidence shows that plaintiffs purchased the Eastwood and Sherwood lots in a single transaction in 1968 for the single price of $45,000. Plaintiffs admitted that they could sell the entire parcel and house today for somewhere between $800,000 and $1 million. The evidence further reveals that Ronald twice declined to answer the question of what return plaintiffs expected from their original $45,000 investment. Plaintiffs also testified at the hearing that they had made improvements to their home, but they did not present any supporting documents showing the value of the specific improvements, and Ronald stated that he never looked at his house as an investment or anticipated a return on his investment. No evidence was presented regarding what kind of return other houses in the area enjoyed over the same time period. Given the lack of evidence presented, the Board properly found that plaintiffs failed to carry their burden of demonstrating that they could not receive a reasonable return on the property without a variance allowing a second house to be built.

Furthermore, the evidence reveals that plaintiffs knew that the

sale and construction of a home on the Sherwood lot were legally prohibited when they bought the property in 1968, and the Board concluded that this was not a reasonable investment expectation. Plaintiffs assert on appeal that the Supreme Court in *Palazzolo v. Rhode Island*, 533 U.S. 606, 150 L. Ed. 2d 592, 121 S. Ct. 2448 (2001), has rendered irrelevant the fact that plaintiffs knew that they could not build on the vacant property when they bought it, and therefore, plaintiffs assert that the Board could not properly consider this as an impediment to their right to the reasonable economically viable use of their property. We disagree.

In *Palazzolo*, the lower court held that the purchaser had no right to challenge regulations predating 1978, when he succeeded to legal ownership of the property. The Supreme Court rejected the lower court's holding that the purchaser was deemed to have notice of an earlier-enacted restriction and therefore was barred from claiming that it effected a taking. *Palazzolo*, 533 U.S. at 626-28, 150 L. Ed. 2d at 613, 121 S. Ct. at 2462. However, the Supreme Court held that such knowledge was not, *ipso facto*, an absolute bar. The Court believed that it "would be illogical, and unfair, to bar a regulatory takings claim because of the post-enactment transfer of ownership where the steps necessary to make the claim ripe were not taken, or could not have been taken, by a previous owner." *Palazzolo*, 533 U.S. at 628, 150 L. Ed. 2d at 614, 121 S. Ct. at 2463; see *Burke v. Village of Glenview*, 257 Ill. App. 3d 63, 70 (1993) ("[t]he purchaser's knowledge of the zoning restriction *** [is] not an absolute bar to a zoning challenge").

Thus, while knowledge of a regulation at the time of ownership is not an absolute bar to a zoning challenge, it is proper to consider that the zoning restriction existed at the time of the plaintiff's acquisition in determining whether the plaintiff's investment-backed expectations have been met. "Purchasers who acquire property with the expectation of using it for a purpose not permissible under current zoning restrictions should not expect loss resulting from denial of the proposed use to be a persuasive argument in securing the change." *Lapkus Builders, Inc. v. City of Chicago*, 30 Ill. 2d 304, 310 (1964); *National Advertising Co. v. Village of Downers Grove*, 204 Ill. App. 3d 499, 512 (1990). Accordingly, we reject plaintiffs' argument. See *Palazzolo*, 533 U.S. at 634-36, 150 L. Ed. 2d at 618-19, 121 S. Ct. at 2466-67 (O'Connor, J., concurring).

■ Plaintiffs next argue that the contiguous ownership provision is invalid as applied to them because it constitutes a denial of reasonable economic use in the context of a neighborhood that has been largely developed under less stringent restrictions when only a very few remaining landowners would be subject to the more restrictive

regulations. Plaintiffs first cite *Gibson v. Village of Wilmette*, 97 Ill. App. 3d 1033 (1981), and *Welch v. City of Evanston*, 65 Ill. App. 3d 249 (1978), as being "virtually identical" to their case. We find these cases directly contrary to the facts here.

Both decisions concern the issue of whether a lot is buildable, but they are distinguishable because the property owners in each case purchased the land before the zoning ordinance that precluded construction was passed. In *Gibson*, before the plaintiffs purchased two lots in 1972, they asked the village whether the vacant lot was buildable and received both oral and written assurances that it was. However, under an ordinance passed in 1975, the property was not buildable. *Gibson*, 97 Ill. App. 3d at 1034. Similarly, in *Welch*, at the time two lots were purchased in 1954, the zoning laws would have permitted the construction of a single-family home. After the adoption of 1960 zoning amendments, only if the two lots were combined would there be sufficient square footage to allow the construction of one home. *Welch*, 65 Ill. App. 3d at 250. Here, unlike in *Gibson* and *Welch*, plaintiffs conceded that, when they purchased the lots in 1968, they knew that the zoning restriction was applicable to the contiguous lots. See *LaGrange State Bank v. Village of Glen Ellyn*, 227 Ill. App. 3d 308, 318 (1992).

After reviewing the record, we find that the Board's determination that plaintiffs' evidence fails to demonstrate that the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations was not against the manifest weight of the evidence. Accordingly, we must affirm the decision of the Board.

■ We note that, although it is unnecessary to address this element, the evidence also supports the Board's decision that plaintiffs failed to satisfy section 150.1205(A)(8). To satisfy section 150.1205(A)(8), plaintiffs were required to show that "[t]he proposed variation is in harmony with the spirit and intent of this Chapter." Highland Park Zoning Ordinance § 150.1205(A)(8) (1997). As plaintiffs acknowledge, the general purposes of the zoning ordinances are to promote the public health (section 150.101(B)(1)), to conserve the value of land and enhance the desirability of living in the community (section 150.101(B)(7)), to regulate the intensity of the use of lot areas and conserve open space (section 150.101(B)(8)), and to prevent overcrowding (section 150.101(B)(8)(b)). In the Board's view, the purpose of zoning plaintiffs' area R-4 was to ensure that homes in the neighborhood are constructed on lots of 20,000 square feet or more. The Board believed that, because the R-4 zoning district within which the property is located is surrounded by smaller, more densely built

lots with R-5 and R-6 zoning, the R-4 district provided a desirable area of greater open space and park land. The Board pointed out that there was no evidence in the record that a variance had ever been granted within this R-4 zoning district to permit construction of a house on a lot as small as that on which plaintiffs' application was based. The Board concluded that plaintiffs failed to meet the requirement of this section because the variance was not in harmony either with the contiguous owner provision or with the zoning district in which plaintiffs were located. The Board's determination is supported by the evidence.

## 2. Constitutional Claims

■ Plaintiffs next contend that the trial court erred in dismissing counts II through IV, which were dismissed pursuant to section 2—615. A section 2—615 motion to dismiss presents a question of law, which is reviewed *de novo*. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147-48 (2002). In reviewing a motion to dismiss under section 2—615, we accept as true all well-pleaded facts and reasonable inferences therefrom. *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 44 (2001). We determine whether plaintiffs assert a cause of action upon which relief may be granted after considering all allegations in a light most favorable to plaintiffs. *Jackson*, 197 Ill. 2d at 45.

■ Plaintiffs contend that the trial court erred in dismissing counts II and III of their complaint for failure to state a legally cognizable cause of action for "taking" their property without just compensation in violation of both the United States and Illinois Constitutions. In the state context, a land use regulation does not effect a taking if it substantially advances legitimate state interests and does not deny an owner economically viable use of his land. *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 32 (1995). Moreover, where an ordinance is an otherwise valid exercise of a municipality's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional. *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592, 8 L. Ed. 2d 130, 133, 82 S. Ct. 987, 989 (1962). In the federal context, where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex set of factors, including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action. *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 57 L. Ed. 2d 631, 648, 98 S. Ct. 2646, 2659 (1978).

In counts II and III, plaintiffs allege that they were deprived of all

economically viable use of the vacant property that they sought to have separated by the variance. Similar to the argument made by the Board under the administrative review claim above, the City responds that plaintiffs' argument continues to proceed on the assumption that we should analyze their takings claim solely on the basis of the Sherwood lot. The City contends that, for takings purposes, both of plaintiffs' lots must be treated as a unitary parcel, not as two separate lots. The City claims that, when evaluating a takings claim, we must first define the relevant parcel, the determination of which is a question of law. We agree; as the definition of the relevant parcel influenced the outcome of the administrative claim, it also profoundly influences the outcome of the takings analysis here. Accordingly, we first define what constitutes the relevant parcel before the regulation's effect can be evaluated.

In several land use cases, Illinois courts have determined the question of whether several lots constitute one parcel for purposes of ascertaining economic viability as a question of law. See *Department of Transportation v. Chicago Title & Trust Co.*, 303 Ill. App. 3d 484, 495 (1999) ("The question of whether certain parcels of land constitute one parcel for purposes of ascertaining remainder damages in an eminent domain action is a question of law"); *Tim Thompson*, 247 Ill. App. 3d at 887-89; *Department of Conservation v. Franzen*, 43 Ill. App. 3d 374, 378 (1976).

As we found *Tim Thompson* relevant to our determination under the administrative claim, we also find it instructive here. Thompson had purchased three contiguous lots in a subdivision. Two months after the lots were purchased, the Village of Hinsdale rezoned the subdivision so that only two of the lots retained the minimum lot size required for building a single-family home. Thompson argued that the rezoning of the subject lots denied it economically viable use of lots 6 and 7. Thereafter, Thompson filed a complaint alleging, *inter alia*, an action for inverse condemnation against Hinsdale, which was dismissed for failing to state a cause of action. Thompson argued on appeal that the trial court erred in dismissing its complaint because Thompson alleged that Hinsdale significantly interfered with Thompson's investment-backed expectations. Similar to the City here, Hinsdale responded that Thompson's failure to allege deprivation of all economically viable use of the *entire* subject property defeated its claim for inverse condemnation under the federal constitution.

Reading Thompson's complaint as a whole and accepting its well-pleaded facts as true, we concluded that Thompson had failed to allege any substantial deprivation of an economically viable use. *Tim Thompson*, 247 Ill. App. 3d at 887. While the zoning regulation did not permit

Thompson to erect three houses on the three individual lots as originally platted, we reasoned that the regulation did not prevent Thompson from developing the property for an economically viable use, as Thompson remained free to develop the entire parcel, subject only to the newly enacted ordinance. The inference drawn from the facts as alleged was that, as zoned, Thompson was not able to realize as much profit from the development as originally anticipated. Thus, "rather than alleging a deprivation of economically viable use, Thompson, in our view, ha[d] alleged, at best, nothing more than a diminution in the ultimate value of the entire parcel, *i.e.*, lots 5, 6 and 7 in the aggregate." *Tim Thompson*, 247 Ill. App. 3d at 887-88.

We noted that, in the seminal case of *Penn Central*, 438 U.S. at 130-31, 57 L. Ed. 2d at 652, 98 S. Ct. at 2662, the Supreme Court stated:

> " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole *** ."

We also pointed out that in *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 94 L. Ed. 2d 472, 107 S. Ct. 1232 (1987), in response to the petitioners' argument that an aspect of a mining subsidence ordinance, which deprived the petitioners of the ability to mine certain areas for coal, was tantamount to an appropriation by the state, the Court responded that the argument failed for the same reason explained in *Penn Central*, that the 27 million tons of coal did not constitute a separate segment of property for takings law purposes. *Keystone*, 480 U.S. at 498, 94 L. Ed. 2d at 496, 107 S. Ct. at 1248-49.

Accordingly, "viewing the subject lots together as an entire parcel, which [was] supported by the well-pleaded fact in Thompson's complaint that it purchased the entire parcel as a single unit at one time," we concluded, as a matter of law, that the allegations of Thompson's complaint failed to allege any substantial deprivation of an economically viable use, thus defeating its claim. *Tim Thompson*, 247 Ill. App. 3d at 888. Because the Hinsdale zoning regulation merely denied Thompson its optimally desired use of the property, and the regulation otherwise allowed the landowner an economically viable use of its property, a regulatory taking had not occurred. *Tim Thompson*, 247 Ill. App. 3d at 888-89.

Although *Penn* and *Keystone* did not involve contiguous lots under the same ownership, specification of the appropriate unit of property

under consideration was at the heart of the decisions, and therefore the principles espoused in those cases offer guidance here. In *Bevan v. Brandon Township*, 438 Mich. 1202, 475 N.W.2d 37 (1991), the Supreme Court of Michigan also found guidance in *Keystone* and *Penn* in determining that the plaintiffs' property should be viewed as a whole rather than as two separate lots for purposes of the taking analysis. In *Bevan*, the plaintiffs owned six acres of undeveloped land that did not front on a public road. Their predecessor in title had divided the parcel into two contiguous lots, each with its own tax description, and the lots were sold separately to the plaintiffs. The only access to the plaintiffs' property was an easement 20 feet wide and 290 feet long across a neighbor's land. Under the township land use ordinance adopted after the plaintiffs acquired title, the land was zoned for single-family homes, and one house could be built on the property. The plaintiffs were restricted from building two or more houses on the property unless access was made available over a road with a right-of-way width of at least 66 feet. It was undisputed that the easement providing the only access to the plaintiffs' property did not meet the minimum width requirement of the ordinance applicable to a private road which served two or more homes. After their application for permits to build two houses on the property was rejected and the variance was denied, the plaintiffs filed suit.

The *Bevan* court noted that "[s]ince for purposes of a taking analysis it is necessary to compare the value 'taken' with the value that remains, 'one of the critical questions is determining how to define the unit of property "whose value is to furnish the denominator of the fraction." [Citation.]' " *Bevan*, 438 Mich. at 393, 475 N.W.2d at 42, quoting *Keystone*, 480 U.S. at 497, 94 L. Ed. 2d at 496, 107 S. Ct. at 1248. Relying on *Penn* and *Keystone*, the court explained that the taking analysis does not turn on the state's recognition of a separate estate within the owner's property or whether state law allows the separate sale of a segment of the property. As *Keystone* reasoned: " '[W]here an owner possesses a full "bundle" of property rights, the destruction of one "strand" of the bundle is not a taking because the aggregate must be viewed in its entirety.' " *Keystone*, 480 U.S. at 497, 94 L. Ed. 2d at 496, 107 S. Ct. at 1248, quoting *Andrus v. Allard*, 444 U.S. 51, 65-66, 62 L. Ed. 2d 210, 223, 100 S. Ct. 318, 326-27 (1979).

We do not find that recognizing that contiguous lots under the same ownership are to be considered as a whole for purposes of judging the reasonableness of zoning ordinances or for a taking analysis affects or detracts from the reasonableness of the classification. "If it were held to be so, the result would be that it would be competent for landowners to perpetually defeat future zoning restrictions by

crisscrossing their lands on a plat map with lines ostensibly dividing the same into parcels so small that each would be unsuited to any foreseeable use unless combined with others." *Korby v. Township of Redford*, 348 Mich. 193, 198, 82 N.W.2d 441, 443 (1957).

We observe at this juncture that the Supreme Court has yet to define the factors used to determine the relevant parcel for takings purposes, which is commonly referred to as the "denominator problem." However, state law has offered some guidance to the federal courts in their determination. See *District Intown Properties Ltd. Partnership v. District of Columbia*, 198 F.3d 874, 879 (D.C. Cir. 1999). For example, in *District Intown Properties*, the court applied such factors as the degree of contiguity, the dates of acquisition, the extent to which the parcel had been treated as a single unit, and the extent to which the restricted lots benefitted the unregulated lot. *District Intown Properties*, 198 F.3d at 880.

■ Here, plaintiffs' amended complaint indicates that they purchased the Eastwood and Sherwood lots as a single unit at one time. In their complaint, they repeatedly refer to the two lots collectively as the "subject property." The complaint alleges that the two lots had been held in contiguous ownership since plaintiffs bought them in 1968. Plaintiffs also admitted before the Board that they could not have purchased the lots separately because of the zoning ordinance, which was in effect at the time the property was purchased, and that they paid a single price of $45,000 for the entire "subject property."

Taking the allegations as pleaded in their complaint, we choose, as we did in *Tim Thompson*, to view the lots together as an entire parcel. This is supported by the well-pleaded facts in plaintiffs' complaint and their admission before the Board. We find the present case presents an even stronger case than *Tim Thompson* because here plaintiffs acknowledged before the Board that the lot they now assert should be treated separately could not legally have been built upon as a separate lot either at the time they purchased the property or at present. We therefore find, as a matter of law, that the two lots should be treated as a unitary parcel.

■ Next, given that the lots should be treated as a single parcel, we must consider whether plaintiffs' claim constituted a takings claim. Because plaintiffs' complaint was dismissed pursuant to a section 2—615 motion, the question before this court is whether their claims set forth a cause of action upon which relief could be granted. Illinois is a fact-pleading state. *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 518 (1989). Accordingly, a pleader is required to set out the ultimate facts that support his or her cause of action,

and legal conclusions unsupported by allegations of specific facts are insufficient. *In re Petition for Annexation of Certain Property to the Village of Plainfield*, 267 Ill. App. 3d 313, 317 (1994).

■ As stated above, in Illinois, a land use regulation does not constitute a taking if it substantially advances legitimate state interests and does not deny an owner the economically viable use of his land. *Northern Illinois Home Builders*, 165 Ill. 2d at 32. Plaintiffs allege that they were denied the economically viable use of the Sherwood lot. However, viewing the subject lots together as an entire parcel, we conclude that the allegations of their complaint fail to state the necessary facts to support their legal conclusion that they were denied the economically viable use of the vacant property, thus defeating their claim. See *Tim Thompson*, 247 Ill. App. 3d at 888.

Plaintiffs further contend that to determine whether legitimate state interests have been advanced, we must examine the factors for evaluating the constitutionality of zoning regulations set out in *LaSalle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40 (1957). The *LaSalle* factors have been consistently used to judge the strength of a plaintiff's case in the context of a *substantive due process* claim, but we have not found any case in which a court has analyzed the *LaSalle* factors in the context of a constitutional takings claim. Plaintiffs in this case have not raised a substantive due process challenge to the zoning regulation. However, to the extent that they raise a substantive due process claim in their takings claim, we will briefly discuss the *LaSalle* factors here.

■ We note that the failure of a complaint to plead a cause of action in terms of all the *LaSalle* factors may indicate its vulnerability to dismissal; however, dismissal should not occur if the pleading theory otherwise supports a claim of unconstitutional arbitrariness or capriciousness. Ordinarily, the *LaSalle* factors have been used to judge the strength of a plaintiff's case after a full presentation of evidence at trial. Not all of them can even be meaningfully applied at an earlier stage. See *Rodriguez v. Henderson*, 217 Ill. App. 3d 1024, 1030 (1991).

■ A zoning ordinance is presumed valid, and a successful challenge requires proof, by clear and convincing evidence, that its enactment was arbitrary, capricious, or unrelated to the public health, safety, and morals. *LaSalle*, 12 Ill. 2d at 46. If the reasonableness of a zoning ordinance is merely debatable, the courts will not interfere. *Rodriguez*, 217 Ill. App. 3d at 1028.

■ In determining whether a municipal ordinance is valid as applied to plaintiffs' constitutional zoning challenge of the unitary parcel, the following factors must be taken into account: (1) the existing uses and zoning of nearby property; (2) the extent to which property values

are diminished by the particular zoning restriction; (3) the extent to which the destruction of property values promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purpose; (6) the length of time the property has been vacant as zoned considered in the context of the land development in the area in the vicinity of the subject property; (7) the community need for the proposed use; and (8) the care with which the community has undertaken its development plan. *Thornber v. Village of North Barrington*, 321 Ill. App. 3d 318, 326 (2001), citing *LaSalle*, 12 Ill. 2d at 46-47. Although no one factor is determinative, a primary concern is whether the property in question is zoned in conformity with surrounding uses and whether those uses are uniform and established. *Thornber*, 321 Ill. App. 3d at 327.

We further point out that our supreme court has instructed that courts must, when deciding whether a land use regulation is valid as applied to a particular property, take into account whether the current owners could have built on the lot when they acquired it, because "[p]urchasers who acquire property with the expectation of using it for a purpose not permissible under current zoning restrictions should not expect loss resulting from denial of the proposed use to be a persuasive argument in securing the change." *Lapkus*, 30 Ill. 2d at 310; see also *National Advertising Co. v. Village of Downers Grove*, 204 Ill. App. 3d 499, 512 (1990) (quoting *Lapkus*).

We note also that plaintiffs again rely on *Gibson* and *Welch*. However, we agree with the City's observation that the holding in *Lapkus* undermines plaintiffs' reliance on those cases. As we stated above, both *Gibson* and *Welch* concerned the issue of whether the respective lots were buildable, but they are distinguishable from the present case because the property owners purchased the lots before the zoning ordinances that precluded construction had been passed. In this case, however, the zoning regulation would not allow construction on the Sherwood lot when plaintiffs purchased the entire parcel. See *LaGrange State Bank v. Village of Glen Ellyn*, 227 Ill. App. 3d 308, 318 (1992).

Plaintiffs argue that the distinction between the present case and *Welch* and *Gibson* is irrelevant when the case is in the pleadings stage. Plaintiffs argue that they are not precluded from bringing a takings claim simply because they purchased the property after the property was rezoned. In support, plaintiffs cite *Furling v. County of Sangamon*, 126 Ill. App. 3d 851 (1984), wherein the plaintiff was not foreclosed from challenging the validity of a preexisting zoning

ordinance. There is no question that an individual has the right to constitutionally challenge a zoning regulation. A zoning ordinance cannot be sustained if it violates the constitution, no matter how long or by whom it is recognized as legal. *LaSalle*, 12 Ill. 2d at 64. While we agree that plaintiffs are not prevented from bringing a constitutional claim merely because they bought their property when the ordinance was in existence, it does not mean that their challenge necessarily will succeed. It simply means that, because no separate single-family home could have been built on the Sherwood lot when plaintiffs acquired it, their argument concerning whether the ordinance denied them the economically viable use of their land has lost its persuasiveness.

### a. *Uses and zoning of nearby property*

■ Plaintiffs' allegations set forth linear facts explaining that for a distance of 100 feet and 250 feet surrounding the Sherwood lot there are adjacent lots that are the same size as or smaller than the Sherwood lot. Plaintiffs further allege that all of the lots on Sherwood Avenue directly across the street from their property have homes on them and are less than 50% of the size of the Sherwood lot. These allegations presume that the street, as a line of demarcation, is irrelevant and presume that the lots are comparable without explaining how they are comparable. It is reasonable for the City to use a street as a line of demarcation when applying a zoning ordinance. See *LaGrange State Bank v. Village of Glen Ellyn*, 227 Ill. App. 3d 308, 316 (1992).

### b. through d. *Diminution in property values, promotion of public welfare, and gain-loss balance*

Plaintiffs allege that prohibiting the building of a single-family home on the Sherwood lot would deny them "reasonable economic use" of the property because they cannot build anything on the lot. This is a legal conclusion that is unsupported by facts or affidavits. Moreover, because the property is considered as a whole, there can be no diminution in property value.

That plaintiffs have failed to allege facts to show that they have suffered a loss in value eliminates any argument plaintiffs could make as to the third and fourth factors, which presume some loss of value on the part of plaintiffs. Plaintiffs' argument concerning the fourth factor also fails because, to the extent there is any hardship to plaintiffs, it is purely self-created.

### e. through f. *Suitability as zoned and length of time property remains vacant*

Plaintiffs allege that, if the City is allowed to prohibit a home on

the Sherwood lot, the effect would be to force plaintiffs to add together the total area of their two separate lots, resulting in their being held to a minimum lot size more than four times larger than many surrounding neighbors and more than twice as large as the rest. Plaintiffs ignore that their property is classified within the R-4 district and that the general purpose of that classification was to regulate the intensity of the use of lot areas to conserve open space and prevent overcrowding. Minimum lot area and width limitations help to sustain neighboring property values and promote the health and welfare of the public by preventing overcrowding and overuse of public services such as sewer and water. *LaGrange State Bank*, 227 Ill. App. 3d at 313. The sixth factor, concerning the length of time in which the property has remained vacant as zoned, is irrelevant.

g. through h. *The community need and the care with which the community has undertaken its development plan*

Plaintiffs' complaint alleges that the zoning history of the subject parcel from a minimum lot size of 20,000 square feet to 12,000 square feet and then back to 20,000 square feet had the effect of preventing only plaintiffs from building a single-family home on the Sherwood lot. Plaintiffs assert that this amounts to "spot zoning." "Spot zoning" is a change in zoning applied only to a small area that is out of harmony with comprehensive planning for the good of the community, zoning that would violate a zoning pattern. *Chicago Title & Trust Co. v. Village of Skokie*, 60 Ill. App. 3d 221, 235 (1978). As stated above, plaintiffs' allegations ignore that the City has undertaken a comprehensive plan to use Sherwood Avenue as a line of demarcation between zoning districts and define the lot area and width limitations of the zoning district in which plaintiffs' property sits to sustain neighboring property values and to conserve the preservation of openness created by the R-4 zoning district.

In sum, given the presumption of the constitutionality of the zoning ordinance, we conclude that plaintiffs' complaint fails to allege sufficient facts to state a claim of a taking or a violation of substantive due process, and therefore, count II of plaintiffs' complaint was properly dismissed.

■■■ Under the federal constitution, a land use regulation does not constitute a taking if it substantially advances legitimate state interests, has a sufficient "nexus" or "connection" to the accomplishment of the interests, and does not deny an owner economically viable use of his land. *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 32 (1995).

Plaintiffs do not dispute that the City has legitimate interests at

stake. See *Reitman v. Village of River Forest*, 9 Ill. 2d 448, 453 (1956) (minimum lot area requirements are permissible because they prevent congestion and promote safety). Moreover, we find that a sufficient nexus exists between reducing density and providing the contiguous ownership regulation to prevent construction on lots of substandard size. See *Klehr v. Zoning Board of Appeals*, 24 Ill. App. 3d 512, 518-20 (1975).

Plaintiffs' complaint states that the City's regulations denied them the economically viable use of their property. A government regulation can effect a taking if it improperly "interferes with reasonable investment-backed expectations." *Palazzolo*, 533 U.S. at 617, 150 L. Ed. 2d at 607, 121 S. Ct. at 2457.

Plaintiffs cite *Palazzolo* again for the proposition that it has rendered irrelevant the fact that plaintiffs knew that they could not build on the vacant property when they bought it in determining whether a regulation interferes with reasonable investment-backed expectations. As we explained earlier, we disagree with this logic. Justice O'Connor's opinion indicates that the role of investment-backed expectations in regulatory takings cases is well settled. See *Palazzolo*, 533 U.S. at 634-36, 150 L. Ed. 2d at 617-19, 121 S. Ct. at 2466-67 (O'Connor, J., concurring). Indeed, if the court in *Palazzolo* had intended to discard this long-standing element of regulatory takings analysis, it presumably would have been more explicit about doing so.

Moreover, in the context of a regulatory taking, the fact that a regulatory ordinance was in place before the owner purchased the property is relevant to the owner's investment-backed expectations. See *Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1350 (Fed. Cir. 2001). Here, plaintiffs' reasonable investment-backed expectations are an especially important consideration in the takings analysis, given that plaintiffs had full knowledge of the land use regulation when they purchased the property more than 30 years ago. A mere diminution in property value that results from regulation does not amount to a taking, and a property owner must prove that the value of his land has been destroyed by the regulation or that he is precluded from using the land as zoned. *Penn Central*, 438 U.S. at 131, 57 L. Ed. 2d at 652-53, 98 S. Ct. at 2663.

Plaintiffs' allegations must present sufficient facts to show that the property is either unsuitable for use as zoned or unmarketable as zoned. Although there may be a disparity between the value of the land with a single home as compared to two homes, plaintiffs provide no facts or affidavits of the extent of that disparity. Plaintiffs' complaint alleges only that they were denied the economically viable

use of their property. However, this allegation is a legal conclusion, which plaintiffs fail to support with factual allegations or affidavits. Furthermore, where an ordinance is an otherwise valid exercise of a municipality's police powers, the fact that the ordinance deprives the property of its most beneficial use will not render it an unconstitutional taking. *Goldblatt*, 369 U.S. at 592, 8 L. Ed. 2d at 133, 82 S. Ct. at 989. Plaintiffs have failed to state a constitutional claim for a taking under the federal constitution. Accordingly, count III of plaintiffs' complaint was properly dismissed.

Plaintiffs next contend that the circuit court erred in dismissing count IV of the complaint for failing to state a claim for a violation of the equal protection clause under the United States and Illinois Constitutions. Equal protection analysis is identical under the United States and Illinois Constitutions. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 322 (1996). The essential test of equal protection is whether the government deals with similarly situated individuals in a similar manner. *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 466 (2002). In evaluating equal protection claims, courts determine whether the government's classification implicates a protected class or affects fundamental rights. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 436 (2000). Land use regulations typically do not implicate any protected class or fundamental right. See, *e.g.*, *Forseth v. Village of Sussex*, 199 F.3d 363, 370-71 (7th Cir. 2000).

Plaintiffs allege that the City's zoning regulation prohibited them from building a home on their property and that "[u]pon information and belief, Defendant City of Highland Park has permitted other persons within the city to build a home on a lot that was held in common ownership after 1960, which decisions to permit home building were and are rationally indistinguishable from the Plaintiffs' request." Plaintiffs do not argue that this case implicates fundamental rights or suspect classes. Their equal protection claim is based on bare unequal treatment.

Plaintiffs may challenge land use decisions under the equal protection clause under a "class of one" theory. To state a cause of action under this theory, plaintiffs must prove that they were intentionally treated differently than others who were similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 1063, 120 S. Ct. 1073, 1074 (2000).

Defendants argue that, under *Olech*, plaintiffs must prove that animus motivated defendants' decision. However, we need not address this argument here because plaintiffs' equal protection claim is unsustainable on other grounds. Plaintiffs still must plead that there is no rational basis for the difference in treatment.

■ Economic or social legislation is normally presumed to be constitutional and will be upheld if it is rationally related to a legitimate state interest. *Douglas v. Stallings*, 870 F.2d 1242, 1245 (7th Cir. 1989). In the area of economics and social welfare, a state does not violate the equal protection clause "merely because the classifications made by its law are imperfect." *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L. Ed. 2d 491, 501, 90 S. Ct. 1153, 1161 (1970). "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because *** 'in practice it results in some inequality.' " *Dandridge*, 397 U.S. at 485, 25 L. Ed. 2d at 501-02, 90 S. Ct. at 1161, quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 55 L. Ed. 369, 377, 31 S. Ct. 337, 340 (1911). To demonstrate a viable equal protection claim in the land-use context where there is no fundamental right or suspect class, the plaintiff must demonstrate governmental action wholly impossible to relate to legitimate governmental objectives. *Forseth v. Village of Sussex*, 199 F.3d 363, 370-71 (7th Cir. 2000). Economic regulation will be upheld, even without any express findings or legislative history, if there is any reasonably conceivable state of facts that could provide a rational basis for the legislation. *Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 806 (7th Cir. 1999).

■ Plaintiffs allege that the failure to permit the development of a single-family home on the Sherwood lot is arbitrary, capricious, and unrelated to the public health, safety, and welfare. Plaintiffs further allege that the refusal to permit plaintiffs to build on their lot while permitting others to build on undersized lots in the same neighborhood or district is rationally incompatible. While we must assume that these claims are true for purposes of a section 2—615 motion to dismiss, this does not mean that plaintiffs have pled governmental action "wholly impossible to relate to legitimate governmental objectives." As pointed out in the case of *Vigilante v. Village of Wilmette*, 88 F. Supp. 2d 888, 891 (N.D. Ill. 2000), which we find equally applicable here:

> "It might be just that the Village thinks that the sort of development [plaintiff] requested would be inappropriate in the particular circumstances, and that therefore a variance is not called for. Perhaps the Village is concerned about the character of the neighborhood, something it does not think was affected by the previous variances, but would be affected by granting [plaintiff's]. The cumulative effect of small changes, each of which by itself is insignificant, may make a difference here."

As in *Vigilante*, we believe that the City is concerned about the

character of the neighborhood and therefore properly found that a variance is not called for. The denial of plaintiffs' variance is thus rationally related to a legitimate government objective supported by a reasonably conceivable set of facts, and the regulation must be upheld. Therefore, plaintiffs' complaint fails to state a cause of action for a claim of equal protection and accordingly was properly dismissed.

It should be noted that this opinion is fact intensive and our decision is applicable only to the specific facts as set forth herein. See *American National Bank & Trust Co. of Chicago v. Village of Libertyville*, 269 Ill. App. 3d 400, 406 (1995) (courts have noted that the attempt to apply *res judicata* to zoning cases is difficult because " 'the facts involved may change over time' "), quoting *LaSalle National Bank v. County of Du Page*, 77 Ill. App. 3d 562, 565 (1979).

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN, J., concurs.

JUSTICE O'MALLEY, dissenting:

I believe plaintiffs presented an overwhelming case for a variance before the Board and that its decision denying plaintiffs' request was against the manifest weight of the evidence. What particularly persuades me of this is the economic harm that the minimum lot size restrictions have caused plaintiffs, which I believe the majority incorrectly measures. I also believe the majority is wrong to uphold the trial court's dismissal of plaintiffs' constitutional claims. In so doing, the majority not only again miscalculates the economic harm done to plaintiffs, but also vastly understates plaintiffs' allegations comparing the Sherwood lot with nearby lots.

I address first the majority's assessment of the economic harm the zoning ordinance has caused plaintiffs. I cannot join the majority in accepting *Tim Thompson*'s holding that a landowner's claim of specific economic harm to a duly platted lot of land is to be diluted by weighing that harm against the value of all land held by the owner that is contiguous to the lot. *Tim Thompson*'s source for the "parcel as a whole" doctrine was the Supreme Court cases of *Keystone* and *Penn Central*, which held, respectively, that neither coal deposits beneath a parcel's surface nor the air above it is a separate piece of property for takings purposes. In so holding, the Supreme Court reasoned: " ' "Taking" jurisprudence does not divide a single parcel of land into discrete segments and attempt to determine whether rights in a particular segment

have been entirely abrogated.' " *Keystone*, 480 U.S. at 497, 94 L. Ed. 2d at 496, 107 S. Ct. at 1248, quoting *Penn Central*, 438 U.S. at 130-31, 57 L. Ed. 2d at 652, 98 S. Ct. at 2662. The Court reasoned further in *Keystone*:

"The 27 million tons of coal do not constitute a separate segment of property for takings law purposes. Many zoning ordinances place limits on the property owner's right to make profitable use of some segments of his property. A requirement that a building occupy no more than a specified percentage of the lot on which it is located could be characterized as a taking of the vacant area as readily as the requirement that coal pillars be left in place. Similarly, under petitioners' theory one could always argue that a setback ordinance requiring that no structure be built within a certain distance from the property line constitutes a taking because the footage represents a distinct segment of property for takings law purposes." *Keystone*, 480 U.S. at 498, 94 L. Ed. 2d at 496, 107 S. Ct. at 1248-49.

The facts at hand are not analogous to any of the scenarios, hypothetical or actual, analyzed by the Supreme Court in *Keystone* and *Penn Central*. Plaintiffs are not seeking this court's complicity in some devious "gerrymandering" of property divisions; we are not called on to give legal significance to imaginary lines so as to artificially enhance the economic harm to the Sherwood lot. The majority mechanically applies *Keystone*'s and *Penn Central*'s analysis to the facts at hand, but such disregard of the particular circumstances of this case is neither necessary nor appropriate. The Supreme Court itself has admitted that takings cases are essentially "ad hoc, factual inquiries." *Penn Central*, 438 U.S. at 124, 57 L. Ed. 2d at 648, 98 S. Ct. at 2659, citing *Goldblatt v. Hempstead*, 369 U.S. 590, 594, 8 L. Ed. 2d 130, 134, 82 S. Ct. 987, 990 (1962). Moreover, the Supreme Court has expressly denied that its cases have settled on a formula for defining how economic harm should be assessed in cases where only a portion of an owner's property is directly affected by a zoning regulation. In *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016 n.7, 120 L. Ed. 2d 798, 813 n.7, 112 S. Ct. 2886, 2894 n.7 (1992), the Supreme Court stated:

"Regrettably, the rhetorical force of our 'deprivation of all economically feasible use' rule is greater than its precision, since the rule does not make clear the 'property interest' against which the loss of value is to be measured. When, for example, a regulation requires a developer to leave 90% of a rural tract in its natural state, it is unclear whether we would analyze the situation as one in which the owner has been deprived of all economically beneficial use of the burdened portion of the tract, or as one in which the owner suffered a mere diminution in value of the tract as a whole."

The Court went on to characterize its approach in *Penn Central* as "unsupportable" and noted that "the uncertainty regarding the composition of the denominator in [the] 'deprivation' fraction has produced inconsistent pronouncements by the Court." *Lucas*, 505 U.S. at 1016 n.7, 120 L. Ed. 2d at 813 n.7, 112 S. Ct. at 2894 n.7. As an example of such inconsistency, the Court compared *Keystone* and *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 67 L. Ed. 2d 322, 43 S. Ct. 158 (1922), which the Court viewed as reaching divergent results based on "nearly identical" regulations. *Lucas*, 505 U.S. at 1016 n.7, 120 L. Ed. 2d at 813 n.7, 112 S. Ct. at 2894 n.7; see also *Keystone*, 480 U.S. at 517 n.5, 94 L. Ed. 2d at 509 n.5, 107 S. Ct. at 1258 n.5 (Rehnquist, J., dissenting) (in announcing in *Penn Central* that takings jurisprudence does not divide a "single parcel" into "discrete segments," the Court "gave no guidance on how one is to distinguish" a "single parcel" from a "discrete segment"); M. Snow, *Defining the Relevant Property in Regulatory Takings Claims*, 17 J. Land Resources & Envtl. L. 403, 417 (1997) (the language in *Lucas* is a "clear warning[ ] *** that parties should not assume that previously settled case law has accurately established a test for determining what constitutes the relevant property in a takings claim"). I find it odd that the majority so hastily accepts as fixed and settled a particular definition of the relevant parcel for takings purposes when the Supreme Court, the originator of that definition, is not willing to admit to such rigidity, and when courts and commentators are starkly divided over the proper approach to defining the relevant parcel.[1] See 17 J. Land Resources & Envtl. L. at 411 ("The problem of whether the relevant property should be defined in broad or narrow terms remains a hotly debated issue today"). Courts in several cases have refused to view all of an owner's contiguous land as the relevant parcel in the facts before them and instead opted for a flexible, fact-specific approach to defining the relevant parcel. See *Ciampitti v. United States*, 22 Cl. Ct. 310 (1991); *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171 (Fed. Cir. 1994); *Kaiser Development Co. v. City and County of Honolulu*, 649 F. Supp. 926 (D. Haw. 1986); *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St. 3d 1, 780 N.E.2d 998 (2002).

I find it notable that, in asking us to examine the harm to the Sherwood lot in isolation from the rest of their property, plaintiffs ask us simply to recognize the lot boundaries already recognized by the City of Highland Park. The City's zoning ordinances attach definite

---

[1] In addition to *Keystone* and *Penn Central*, the majority relies on *Bevan*, a Michigan case. *Bevan* was decided before the Supreme Court's retreat from *Penn Central* and *Keystone* in *Lucas*, and therefore is of doubtful vitality.

legal consequences to lot lines. Witness, for instance, section 150.104(A) of the Highland Park Zoning Ordinance of 1997, which provides:

> "When two or more parcels of land (which may contain a lot or lots of record), are adjacent and one or more of such parcels lack adequate area or width to qualify for a permitted use under the requirements of the zoning district in which such parcels are located, all of such parcels shall be maintained and used as one zoning lot for such use if such parcels have been held in contiguous ownership at any time after May 8, 1960 ***." Highland Park Zoning Ordinance § 150.104(A) (1997).

In my view, this section has two effects. First, it combines two or more adjacent undersized lots into one lot for the purpose of minimum lot size requirements, thus potentially allowing development in cases where it would otherwise be prohibited. Conversely, it prohibits an owner from shifting lot lines so as to create one or more conforming lots.[2] Therefore, if any party in this case is overreaching, it is the City, for, in urging an inclusive definition of plaintiffs' property that disregards internal lot divisions, it is downplaying the significance of the very lot line to which its zoning ordinances ascribe importance. In my view, the only proper approach is to recognize, as does the City's zoning ordinance, the lot line dividing plaintiffs' property and to define the relevant property for takings purposes as simply the Sherwood lot. In my view, the economic harm to the Sherwood lot is devastating, for the ordinance precludes building on the lot. Since, in my assessment, plaintiffs clearly proved their case for a variance before the Board, I believe the Board's decision was against the manifest weight of the evidence.

I also cannot accept the majority's approval of the dismissal of plaintiff's constitutional challenges to the ordinance. In reviewing a section 2—615 motion to dismiss a complaint for failure to state a cause of action, the court must assume the truth of all well-pleaded facts and draw all reasonable inferences therefrom in favor of the non-moving party. *Jackson*, 197 Ill. 2d at 44-45. Not only does the majority,

---

[2]Plaintiffs claim that section 150.104(A) has thwarted their plans to build because it prohibits the "separation" of their contiguous lots. Why plaintiffs would seek mere "separation" of their lots is not clear, however, for neither lot meets the current size requirements. Plaintiffs have, it seems, gotten the majority to subscribe to their strange notion, and so the majority writes that section 150.104(A) prevents plaintiffs from building because it "den[ies] permission for[ ] the separation of contiguous undersized lots that are held under the same ownership." 344 Ill. App. 3d at 264. I fail to see how section 150.104(A) prevents plaintiffs from having their lots separated or what plaintiffs would gain by the separation.

in discussing this issue, repeat its mistaken calculation of the economic damage suffered by plaintiffs, it also gives short shrift to plaintiffs' allegations concerning the zoning and uses of nearby property. The majority summarizes plaintiffs' allegations on this point in the following statement: "Plaintiffs' allegations set forth linear facts explaining that for a distance of 100 feet and 250 feet surrounding the Sherwood lot are adjacent lots which are the same size as or smaller than the Sherwood lot." 344 Ill. App. 3d at 277. The majority discounts plaintiffs' allegations as "presum[ing] that the lots are comparable without explaining how they are comparable." 344 Ill. App. 3d at 277. The majority itself presumes, mistakenly, that lot size alone is not an adequate basis for comparison. See *Gibson*, 97 Ill. App. 3d at 1038 (comparing sizes of nearby lots to assess the utility of minimum size restriction); *Thompson v. Cook County Zoning Board of Appeals*, 96 Ill. App. 3d 561, 577-78 (1981) (same); *Welch*, 65 Ill. App. 3d at 254 (same). Plaintiffs alleged that the Sherwood lot (15,415 square feet in size) is "the only vacant nonconforming lot in the area." Plaintiffs further alleged that the "majority" of lots in the vicinity of Sherwood Avenue are no larger than the Sherwood lot and that most are in fact "considerably smaller" than the Sherwood lot. Plaintiffs averred that, of the nine lots located within 100 feet of the Sherwood lot, eight are the same size as or smaller than the Sherwood lot and four are only 7,500 square feet in size. Plaintiffs also alleged that, of the 18 lots within 250 feet of the Sherwood lot, 15 are the same size as or smaller than the Sherwood lot and half are smaller than 10,000 square feet.

These allegations are critical because, if true, they would undercut the City's rationale for demanding that plaintiffs' lot comply with the minimum lot size restrictions. Under the federal constitution, a land use regulation does not constitute a taking if it substantially advances legitimate state interests and does not deny the owner economically viable use of his land. *Northern Illinois Home Builders*, 165 Ill. 2d at 32. In my view, plaintiffs have successfully alleged not only that the City's minimum lot size restrictions deny them economically viable use of the Sherwood lot, but also that the restrictions advance no legitimate state interest because plaintiffs' lot is the only undeveloped nonconforming lot within a significant radius and, moreover, is significantly larger than many of the surrounding lots, which are developed nonconforming lots.

Whether an ordinance effects a taking under the Illinois Constitution requires consideration of a set of factors enumerated in *LaSalle*. Although no single factor or subset of factors controls the analysis (*LaSalle*, 12 Ill. 2d at 47; *Tim Thompson*, 247 Ill. App. 3d at 872), the factor that is of " 'paramount importance' " in the analysis is

" 'whether the restrictions imposed on the property are in conformity with the uses and zoning of nearby property.' " *Rodriguez*, 217 Ill. App. 3d at 1028, quoting *Amalgamated Trust & Savings Bank v. County of Cook*, 82 Ill. App. 3d 370, 381 (1980); accord *Northern Trust Bank/Lake Forest, N.A. v. County of Lake*, 311 Ill. App. 3d 332, 337 (2000). If we assume, as we must at this stage, that plaintiffs hold the only undeveloped nonconforming lot in the area and many of the developed lots are either the same size as or significantly smaller than plaintiffs' lot, then plaintiffs have, in my view, demonstrated that holding them to the minimum lot size restrictions has no utility. Although I will not address all of the remaining *LaSalle* factors here, I believe plaintiffs have the better argument on each of them. In particular, plaintiffs have shown that the minimum lot size restriction has caused devastating economic harm. I believe, therefore, that it was error for the trial court to dismiss plaintiffs' state constitutional claims.